## **Exhibit B**

Proposed Interim DIP Order

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TLC Vision (USA) Corporation, *et al.*,[1] | ) Case No. 09-          ( ) |
| | ) |
| Debtors. | ) Jointly Administered |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (1) APPROVING SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING WITH PRIORITY OVER CERTAIN SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) AUTHORIZING USE OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION, (5) MODIFYING AUTOMATIC STAY, AND (6) SCHEDULING A FINAL HEARING

Upon the motion (the "DIP Motion") of TLC Vision (USA) Corporation ("TLC"), TLC Vision Corporation (the "Parent") and TLC Management Services, Inc. ("TLC Management") as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, with any Successor Cases (as defined herein), the "Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Del Bankr. L.R. 4001-2, seeking entry of an interim order (this "Interim Order") *inter alia*:

      (i)     authorizing the Debtors to obtain an aggregate amount not to exceed $15 million of secured, superpriority postpetition financing with priority over certain secured

---

[1] The Debtors in the cases, along with the last four digits of each Debtor's federal tax identification number and address, are: TLC Vision (USA) Corporation (6220) 16305 Swingley Ridge Road, Chesterfield, MO 63017; TLC Vision Corporation (1150) 5280 Solar Drive, Suite 300, Mississauga, Ontario, L4W 5M8; and TLC Management Services, Inc. (0374) 1209 Orange Street, Wilmington, DE 19801.

indebtedness and with administrative priority (the "DIP Facility") pursuant to the terms and conditions of that certain Senior Secured Super Priority Debtor-in-Possession Credit Agreement (as it may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Credit Agreement") by and among the Debtors, the lenders party thereto from time to time (the "DIP Lenders") and Cantor Fitzgerald Securities, as collateral agent and administrative agent (in such capacity, the "DIP Agent"), for and on behalf of itself and the DIP Lenders, substantially in the form of Exhibit A attached to the DIP Motion;

(ii)     authorizing the Debtors to execute and deliver the DIP Credit Agreement and other related loan documents (collectively, the "DIP Documents") by and among the Debtors, the DIP Agent and the DIP Lenders party thereto and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)    authorizing the Debtors to direct all of the direct and indirect domestic and foreign subsidiaries of the Parent (other than TLC and TLC Management), as may be designated by the Required DIP Lenders (as defined below) (the "DIP Guarantors") to execute and deliver joint and several guarantees of the obligations under the DIP Facility (the "DIP Guarantees"), including, without limitation, each of the subsidiaries listed on Schedule I to the DIP Credit Agreement and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iv)    granting to the DIP Agent and the DIP Lenders allowed superpriority administrative expense claims in the Cases and any Successor Cases for the DIP Facility and all obligations owing thereunder and under the DIP Documents, including all indemnification obligations of the Debtors thereunder (collectively, and including all "Obligations" as described

in the DIP Credit Agreement, the "DIP Obligations")[2], subject to the priorities set forth in paragraph 8 below;

(v)     granting to the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected, valid, priming and enforceable security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"), which liens shall be subject to the priorities set forth in paragraph 7 below;

(vi)     authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Documents as they become due, including, without limitation, upfront fees, unused line fees, extension fees, exit fees, closing fees, facility fees, backstop fees, fronting fees, administrative and collateral agent's fees, the fees and disbursements of the DIP Agent's and DIP Lenders' attorneys, advisers, accountants, and other consultants, all to the extent provided by and in accordance with the terms of the DIP Documents;

(vii)     authorizing the Debtors' use of Cash Collateral of the Prepetition Agent and Prepetition Lenders (each as defined herein);

(viii)     providing adequate protection to the Prepetition Agent and the Prepetition Lenders for any diminution in value of their interests in the Prepetition Collateral (as defined herein), including the Cash Collateral;

---

[2] For purposes of this Interim Order, "Obligations" shall include Obligations of any Loan Party under the Loan Documents.

(ix)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(x)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the Affidavit of Michael F. Gries in support of the chapter 11 petitions and first day motions, the exhibits attached thereto, the DIP Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on December [_], 2009 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     *Petition Date:* On December 16, 2009 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.

B.     *Debtors in Possession.* The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

C.     *Jurisdiction and Venue.* This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceeding on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     *Statutory Committee.* As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Statutory Committee").

E.     *Debtors' Stipulations.* Without prejudice to the rights and interests of third parties as set forth below in paragraph 30, each Debtor admits, stipulates, acknowledges, agrees and upon entry of this Interim Order shall be immediately bound by the following (collectively, paragraphs E(i) through E(viii) below are referred to herein as the "Debtors' Stipulations"):

(i)     *Prepetition Facility:* Pursuant to that certain Amended and Restated Credit Agreement dated as of June 21, 2007 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Credit Agreement", and together with all other loan and security documents related to, referenced in or executed in connection with the Prepetition Credit Agreement, the "Prepetition Credit Documents"), by and among TLC, the

Parent (as guarantor), the other additional guarantors party thereto, the lenders from time to time party thereto (the "Prepetition Lenders"), and Wells Fargo Bank, N.A., as collateral agent and as administrative agent (in such capacity, the "Prepetition Agent"), the Prepetition Lenders provided revolving and term loans and a letter of credit facility to TLC and provided other financial accommodations (including pursuant to Hedge Agreements (as defined in the Prepetition Credit Agreement) to or for the benefit of the Debtors and the Additional Guarantors (as defined in the Prepetition Credit Documents) (collectively, the "Prepetition Facility").

(ii)     *Prepetition Obligations:*  As of the Petition Date, (a) the outstanding principal amount of all Term Advances (as defined in the Prepetition Credit Agreement) equals US $76,659,696.92, (b) the outstanding principal amount of all Revolving Credit Advances (as defined in the Prepetition Credit Agreement) equals US $23,400,000.00; (c) the outstanding LC Exposure (as defined in the Prepetition Credit Agreement) equals US $50,000 and CAD $1,000,000 and (d) the outstanding amount under Hedge Agreements (as defined in the Prepetition Credit Agreement) equals US $1,605,478.79 (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Credit Documents, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), expenses reimbursement, indemnification obligations, reimbursement obligations in respect of letters of credit and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof to the extent and as provided for in the Prepetition Credit Documents, including all "Obligations" of the Debtors and the Additional Guarantors (as described therein) as such "Obligations" are described in the Prepetition Credit Agreement (collectively, the "Prepetition Obligations").

(iii)    *Prepetition Liens and Prepetition Collateral.*  As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtors and the Additional Guarantors (as defined in the Prepetition Credit Documents) granted to the Prepetition Agent, for the benefit of itself, the Prepetition Lenders, and Hedge Bank (as defined in the Prepetition Credit Agreement) security interests in and liens (the "Prepetition Liens") on substantially all of the assets of each Grantor (as defined therein), whether now or hereafter acquired by such Grantor, wherever located, and whether now or hereafter existing or arising (all collectively referenced to as the "Collateral" thereunder) including, but not limited to: (i) all Account Collateral; (ii) all Equipment; (iii) all Receivables; (iv) all Related Contracts; (v) all the Security Collateral; (vi) Assigned Agreements; (vii) all Commercial Tort Claims Collateral; (viii) all Intellectual Property Collateral; and (ix) all Inventory (collectively, the "Prepetition Collateral").[3]

(iv)    *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations.*  The Debtors acknowledge and agree on behalf of themselves and, to the extent applicable, the Additional Guarantors (as defined in the Prepetition Credit Documents), that: (a) the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition

---

[3] All defined terms used to describe the Prepetition Collateral shall have the meanings ascribed to them in the Prepetition Credit Documents.  Nothing contained herein shall be construed so as to limit the scope of the Prepetition Liens. Reference is made to the Prepetition Credit Documents for a complete description of the Prepetition Collateral.

Date, the "Permitted Encumbrances")[4]; (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates (including the Additional Guarantors) have no claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Agent or Prepetition Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Credit Documents; (f) the Prepetition Obligations are allowed secured claims within the meaning of section 506 of the Bankruptcy Code, in a principal amount of not less than $102,715,175.71, together with accrued and unpaid interest, fees (including, without limitation, attorneys' fees and related expenses), expenses, expenses reimbursement, indemnification obligations, reimbursement obligations in respect of letters of credit, and any and all other charges of whatever nature owing in respect of such Prepetition Obligations to the extent and as provided in the Prepetition Credit Documents; (g) the Debtors and the Additional Guarantors have waived, discharged and released any right they may have to challenge any of the Prepetition Obligations and the security for these obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action

---

[4] For purposes of this Interim Order, Permitted Encumbrances shall include any liens that were valid, senior, prior and perfected under applicable law as of the Petition Date. Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Encumbrances are valid, senior, enforceable, prior, perfected or non-avoidable.

against the Prepetition Agent, Prepetition Lenders, and/or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; and (h) any payments made on account of the Prepetition Obligations to or for the benefit of the Prepetition Agent or the Prepetition Lenders prior to the Petition Date were payments out of the Prepetition Collateral, in accordance with the Prepetition Credit Documents, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(v)     *Cash Collateral.* All of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute the Cash Collateral of the Prepetition Agent and Prepetition Lenders.

(vi)    *Intercreditor Agreement.* The respective rights, obligations and priorities of the Prepetition Lenders with respect to their respective interests in the Prepetition Collateral shall be governed by the terms of the Prepetition Facility, this Interim Order and any intercreditor agreement that may be entered into by and among the subject parties (the "Intercreditor Agreement").

(vii)   *Waiver.* The Debtors hereby agree that until such time as all DIP Obligations and all Prepetition Obligations are indefeasibly paid in full in cash and completely satisfied, the Debtors shall not in any way prime or seek to prime or otherwise cause to be subordinate in any way, the DIP Obligations, the DIP Liens, the Prepetition Obligations or the Prepetition Liens, by offering a subsequent lender or any party-in-interest a superior or pari passu lien or claim pursuant to section 364 of the Bankruptcy Code; provided however, the Debtors are authorized to obtain the priming financing provided for herein and any replacement

financing, including exit financing, that satisfies and pays the DIP Obligations in full in cash at the closing of such replacement financing and is consented to by the Required DIP Lenders.

(viii) *Default by the Debtors*. The Debtors acknowledge and stipulate that the Debtors are in default of their debts and obligations under the Prepetition Credit Documents and that notices to this effect were sent to the Debtors.

F.  *Findings Regarding the Postpetition Financing*.

(i) *Need for Postpetition Financing and Use of Cash Collateral*. The DIP Facility is superior to the Debtors' other alternatives, if any, including the use of Cash Collateral alone. The Debtors' need to obtain credit pursuant to the DIP Facility and to use Cash Collateral is immediate and critical in order to enable the Debtors and the Additional Guarantors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors and the Additional Guarantors to maintain business relationships with their vendors, suppliers and customers, to pay their employees, to make utility deposits and to otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful reorganization. Neither the Debtors nor the Additional Guarantors have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and use of Cash Collateral.

(ii) *No Credit Available on More Favorable Terms*. Given their financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors have been unable to obtain sufficient unsecured credit allowable under

Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain credit: (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; or (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders, (i) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 7 hereof, (ii) superpriority claims with the priorities set forth in paragraph 8, and (iii) the other protections set forth in this Interim Order.

(iii)     *Use of Proceeds of the DIP Facility.* As a condition to the entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and the agreement for the use of Cash Collateral, the DIP Agent and the DIP Lenders require, and the Debtors have agreed that, proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Documents and in accordance with and to the extent set forth in the budget (as the same may be modified from time to time with the consent of the Required DIP Lenders[5]), consistent with the terms of the DIP Documents and subject to such variances as permitted by the DIP Credit Agreement (the "Budget"), solely for (a) working capital and other general corporate purposes to fund operations of the Debtors and the Additional Guarantors, (b) permitted payment of costs of administration of the Cases, and (c) payment of such prepetition and postpetition expenses as have been or hereafter are consented to by the Required DIP Lenders, in their reasonable discretion, and are approved by the Court.

---

[5]As used throughout, the term "Required DIP Lenders" shall have the same meaning as the meaning of the term "Required Lenders" in the DIP Documents and the term "Required Lenders" shall have the same meaning as the meaning of the term "Required Lenders" in the Prepetition Credit Agreement.

G.   *Adequate Protection*.   The Prepetition Agent, for the benefit of itself and the Prepetition Lenders, is entitled to receive adequate protection on account of its interests in the Prepetition Collateral pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code to the extent of any diminution in the value of its interests in the Prepetition Collateral (including Cash Collateral) resulting from the subordination to the Carve Out and to the DIP Liens (each as defined herein), the Debtors' use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, and to the extent of any such diminution in value, the "Diminution in Value").   Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, will receive (i) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 herein, (ii) adequate protection payments in amounts equal to all amounts accruing (or that would be accruing but for the filing of the Cases) from and after the Petition Date in accordance with the terms of the Prepetition Credit Documents including, but not limited to, interest accruing at the default rate and fees and all other amounts accruing thereunder, and (iii) ongoing payment of the fees, costs and expenses of (A) the Prepetition Agent and its counsel Ropes & Gray LLP, (B) Bingham McCutchen LLP ("Bingham"), counsel to certain of the Lenders (the "Lender Group"), pursuant to an engagement letter dated as of February 10, 2009, (C) Pachulski Stang Ziehl & Jones LLP, local Delaware counsel engaged by Bingham, subject to the terms and conditions of the fee agreement dated as of February 10, 2009, as amended, between TLC and Bingham (the "Fee Agreement") (D) Stikeman Elliott LLP[6], Canadian local counsel engaged by Bingham, subject to the terms and conditions of the Fee Agreement, and (E)

---

[6] By way of clarification, Bingham McCutchen LLP, Pachulski Stang Ziehl & Jones LLP, and Stikeman Elliott LLP represent a substantial majority in principal amount, but not all, of the Prepetition Lenders.  Pachulski Stang Ziehl & Jones LLP serves as Delaware counsel to such lenders and Stikeman Elliott LLP serves as Canadian counsel to such lenders.  A rule 2019 Statement shall be filed by Bingham McCutchen LLP in accordance with law setting forth the scope of the representation.

Gordian Group LLC, the financial adviser engaged by Bingham for the benefit of the lenders represented by it, pursuant to an engagement letter, dated as of February 10, 2009 (collectively the "Lender Group Advisors"), in the case of (A) through (E) retained to assist in connection with these Chapter 11 Cases.

H.     *Sections 506(c) and 552(b)*.  In light of (i) the DIP Agent's and DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out (as defined herein); and (ii) the Prepetition Agent's and Required Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out, DIP Liens and DIP Superpriority Claim and to permit the use of their Cash Collateral for payments made in accordance with the Budget and this Interim Order, each of the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders are entitled, upon entry of a Final Order (as defined herein), to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.     *Good Faith of the DIP Agent and the DIP Lenders*.

(i)     *Willingness to Provide Financing*.  The DIP Lenders each are willing to provide financing to the Debtors subject to:  (a) the entry of this Interim Order and the Final Order (as defined herein); (b) the DIP Lenders' approval of the terms and conditions of the DIP Facility and the DIP Documents and satisfaction of all conditions precedent in the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided in section 364(e) of the

Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order, or by the filing or pendency of any motion or appeal seeking to reverse, modify, vacate, amend, reargue, or reconsider this Interim Order or any other order.

(ii)     *Business Judgment and Good Faith Pursuant to Section 364(e)*.   The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agent, the DIP Lenders and the Lender Group.  Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

J.     *Agreement of Prepetition Lenders*.  Pursuant to that certain Amendment No. 6 to Credit Agreement dated as of December [___], 2009 among the Prepetition Lenders, the Debtors, the Additional Guarantors and the Prepetition Agent, the Prepetition Lenders have agreed to the priming of the Prepetition Obligations and the Prepetition Liens as provided herein, and have agreed to the superpriority claims, security interests and liens, granted to the Prepetition Lenders pursuant to this Interim Order and the Final Order.

K. *Final Hearing.* At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance satisfactory to the Required DIP Lenders, the DIP Agent and the Required Lenders, approving such postpetition financing arrangements and use of Cash Collateral arrangements and consistent with the DIP Agreement, notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

L. *Notice.* Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) each of the Debtors' thirty (30) largest unsecured creditors; (iii) counsel to the Prepetition Agent for itself and for the Prepetition Lenders; (iv) Lender Group Advisors; (v) counsel to other holders of record of liens on or security interests in the Debtors' assets, (vi) required governmental agencies, and (vii) counsel to the DIP Agent for itself and for the DIP Lenders. The foregoing notice complies with Bankruptcy Rule 4001(c), and no other or further notice is necessary for purposes of this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1. Interim Financing Approved. The DIP Motion is granted, the Interim Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.      Objections Overruled. All objections to the Interim Financing and to the entry of the Interim Order, if any, to the extent not withdrawn or resolved are hereby overruled.

**DIP Facility Authorization**

3.      Authorization of the DIP Financing and DIP Documents. The DIP Documents are hereby approved on an interim basis. The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents (including authorizing and causing the execution of appropriate documents by the DIP Guarantors) and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Interim Order and the DIP Documents. The Debtors are hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, backstop fees, extension fees, exit fees, administrative and collateral agent's fees, the fees and disbursements of the DIP Agent and the DIP Lenders (including the reasonable fees and expenses of the DIP Agent's and the DIP Lenders' attorneys, advisers, accountants, and other consultants, collateral examination, monitoring and appraisal fees, financial advisory fees, indemnification obligations, and any other reimbursement of fees and expenses, all of which fees and expenses shall constitute DIP Obligations), all to the extent provided in the DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding

obligations of the Debtors, enforceable against the Debtors and their estates in accordance with the terms of the DIP Documents.

4.    <u>Authorization to Borrow</u>.  Subject to the terms and conditions set forth in the DIP Documents, DIP Facility, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estate, the Debtors are hereby authorized to make up to two (2) draws in the form of terms loans in an aggregate amount not to exceed the aggregate principal amount of $15,000,000 as follows (which loans may be prepaid or repaid, but shall not be reborrowed or readvanced):

(a)    an initial draw in the amount of $7,500,000 upon or after the entry of this Interim Order (the "<u>Interim Financing</u>"); and

(b)    a second draw in an amount not greater than $15,000,000 minus the amount of the Interim Financing upon or after the entry of the Final Order (the "<u>Final Order Financing</u>").

5.    <u>DIP Obligations</u>.  The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceedings or Cases superseding or related to any of the foregoing (each a "<u>Successor Case</u>").  Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Agent or the DIP Lenders under the DIP Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses

and other amounts owed pursuant to the DIP Documents. The DIP Obligations shall be due and payable, without notice or demand on the earlier to occur of (a) (i) (45) days after the date of the entry of the Interim Order, if a Final Order has not been entered by such date, or (ii) 150 days after the Petition Date (the "Commitment Termination Date"), (b) the effective date of a confirmed plan of reorganization of the Debtors, (c) the date a sale or sales of all or substantially all of the Debtors' assets is consummated under section 363 of the Bankruptcy Code, (d) the date of conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code, (e) except as expressly contemplated by the Joint Plan of Reorganization filed or to be filed by the Debtors in form and substance acceptable to the Debtors and the Prepetition Lenders (the "Plan"), a proposal or liquidation of any or all of substantially all of the assets of the Parent or any of the Guarantors under the Bankruptcy Insolvency Act (Canada), (f) the dismissal of any of the Cases, and (g) approval by the Court of any other debtor-in-possession financing unless (A) in the event that the liens securing such indebtedness are senior to or pari passu with liens securing the obligations under the Prepetition Credit Agreement but junior to the liens securing the DIP Facility, entry into such financing is consented to by the Required Lenders and (B) in the event that the liens securing such indebtedness are senior to or pari passu with the liens securing the DIP Facility, entry into such financing is consented to by both the Required DIP Lenders and the Required Lenders and (h) the Termination Declaration Date (as defined herein).

6.      DIP Liens and DIP Collateral. Effective immediately upon the execution of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code:  (a) the DIP Agent is hereby granted, for the benefit of itself and the DIP Lenders, continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (the "DIP Liens") all existing and after acquired

real and personal property, and other assets of the Debtors, tangible and intangible, whether now owned by or owing to, or arising in favor of the Debtors, whether owned or consigned by or to, or leased from or to the Debtors (to the full extent of the Debtors' interest therein), and regardless of where located, including, without limitation, the following (collectively, the "DIP Collateral"):[7] (A) all Collateral (as defined in the DIP documents) and the proceeds thereof,[8] (B) all avoidance power claims and actions under Section 549 of the Bankruptcy Code relating to any postpetition transfer of DIP Collateral and any proceeds thereof, (C) subject to entry of a Final Order, all avoidance claims or actions under chapter 5 of the Bankruptcy Code and any proceeds thereof, (D) any unencumbered assets of any Debtor, and (E) proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all tangible or intangible property resulting form the sale, exchange, collection or other disposition of any of the foregoing, or any portion thereof or interest therein.

7.    DIP Lien Priority.  The DIP Liens securing the DIP Obligations shall be priming priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected security interests and liens junior only to the (a) Carve Out (as defined below) and (b) Permitted Encumbrances and shall otherwise be senior in priority and superior to all other security interests, mortgages, collateral interests, liens or claims on or to any of the DIP Collateral including, but not limited to, the Prepetition Liens. Other than as specifically set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore

---

[7] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Documents.  All terms not specifically defined in the DIP Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code.

[8] DIP Collateral shall include Collateral provided by non-debtors and the proceeds thereof; provided, that nothing herein shall be construed to expand the Court's jurisdiction over non-debtor Collateral.

or hereinafter granted in the Case or any Successor Case. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of any of the Case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or Successor Case. The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or, upon entry of the Final Order, section 506(c) of the Bankruptcy Code.

8.     DIP Superpriority Claim. Upon entry of this Interim Order, the DIP Agent and the DIP Lenders are hereby granted, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Case (collectively, the "DIP Superpriority Claim") for all DIP Obligations. The DIP Superpriority Claim shall be subordinate only to the Carve Out, and shall otherwise have priority over any and all administrative expenses and unsecured claims against the Debtors or their estates in the Case and any Successor Case, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code (including, subject to entry of the Final Order, section 506(c)), and at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.

9.     No Obligation to Extend Credit. None of the DIP Agent or DIP Lenders shall have any obligation to make any loan under the DIP Documents, unless all of the conditions precedent to the making of such loan under the applicable DIP Documents and this Interim Order have been satisfied in full or waived in writing by the Required Lenders.

10.     Use of DIP Facility Proceeds. From and after the Petition Date, the Debtors shall use loans under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Documents and in compliance with the Budget, a copy of which is attached as Exhibit A hereto, which sets forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Budget; provided, however, that for any week in the Budget, the amounts for each line item may vary so long as the Debtors are in compliance with the cash variance tests set forth in Section 5.04 of the DIP Credit Agreement (collectively the "Cash Variance Tests").

**Authorization to Use Cash Collateral and for Adequate Protection**

11.     Authorization to Use Cash Collateral. Subject to the terms and conditions of this Interim Order and the DIP Documents, the Debtors are authorized to use Cash Collateral in accordance with the Budget (subject to the Cash Variance Tests) until the earlier to occur of the Termination Declaration Date (as defined below) and the Commitment Termination Date; provided, however, that during the Remedies Notice Period (as defined in paragraph 24 hereof) the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll obligations and to pay expenses critical to the preservation of the Debtors and their estates as agreed to by the Required DIP Lenders in their sole discretion. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents, and in accordance with the Budget.

12. Adequate Protection Liens.

(a) *Adequate Protection Liens.* Pursuant to section 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral against any Diminution in Value of such interests, the Debtors hereby grant to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, continuing valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "Adequate Protection Liens").

(b) *Priority of Adequate Protection Liens.* The Adequate Protection Liens shall be junior only to: (i) the Carve Out, (ii) the DIP Liens, and (iii) Permitted Encumbrances. The Adequate Protection Liens shall otherwise be senior to all other security interests, mortgages, collateral interests, liens or claims on or to any of the DIP Collateral. Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Case or any Successor Case, and shall be valid and enforceable against any trustee appointed in the Case or any Successor Case, or upon the dismissal of the Case or any Successor Case. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

13. Adequate Protection Superpriority Claims.

(a) *Adequate Protection Superpriority Claims.* As further adequate protection of the interests of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral

against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Agent and the Prepetition Lenders are each hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Case and any Successor Case (the "Adequate Protection Superpriority Claims").

(b) *Priority of Adequate Protection Superpriority Claims.* The Adequate Protection Superpriority Claims shall be junior only to the (i) Carve Out and (ii) DIP Superpriority Claim. Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code.

14. Adequate Protection Payments and Protections. As further adequate protection, the Debtors are authorized to and shall provide adequate protection to the Prepetition Agent and the Prepetition Lenders, in the form of: (a) adequate protection payments in amounts equal to all amounts accruing (or that would be accruing but for the filing of the Cases) from and after the Petition Date in accordance with the Prepetition Credit Documents, including but not limited to interest accruing at the default rate and fees and other amounts accruing thereunder; and (b) ongoing payment of the fees, costs and expenses, including, without limitation, reasonable legal and other professionals' fees and expenses, of the Prepetition Agent and the Lender Group, including the fees, costs and expenses of the Lender Group Advisors (whether incurred or

accrued before or after the Petition Date). Adequate protection payments made pursuant to clause (a) of this paragraph 14 in amounts equal to interest, fees and other amounts accruing from and after the Petition Date shall be applied to such amounts accruing after the Petition Date. All adequate protection payments payable pursuant to this paragraph 14 shall be payable monthly in arrears on the last day of each month (or the next Business Day, if such day is not a Business Day) and shall also be payable on the effective date of a plan of reorganization in any or all of the Cases, the date of dismissal of any or all of the Cases, or the date on which any or all of the Cases is converted to a liquidation proceeding or a trustee or examiner is appointed for cause, in each case for all amounts accrued through such date.

15.     Section 507(b) Reservation.   Nothing herein shall impair, limit or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Agent and/or the Prepetition Lenders pursuant to this Interim Order is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Case or any Successor Case.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

16.     Amendment of the DIP Documents.   The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto in accordance with the provisions thereof without notice or a hearing if:  (a) the amendment, modification, or supplement is (i) in accordance with the DIP Documents, (ii) beneficial to the Debtors, and (iii) not prejudicial in any material respect to the rights of third parties; (b) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification or supplement is provided to counsel for any Statutory Committee and the U.S. Trustee; and (c) the amendment, modification or supplement is filed with the Court; *provided, however*, that consent of any Statutory Committee or the U.S. Trustee, and approval of the Court is not necessary to effectuate any such

amendment, modification or supplement.  Any other amendments, modifications or supplements to the DIP Documents may be made on three (3) business days' notice, or such shorter notice as agreed to by the Debtors and the Required DIP Lenders, and are subject to approval by the Court.

17.     Budget Maintenance.  The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance acceptable to and approved by the Required DIP Lenders in their reasonable discretion.

18.     Modification of Automatic Stay.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent or the Prepetition Agent each may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders under the DIP Documents, the DIP Facility and this Interim Order; and (d) authorize the Debtors to pay, and the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders to retain and apply, payments made in accordance with the terms of this Interim Order.

19.     Perfection of DIP Liens and Adequate Protection Liens.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the

avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Agent is authorized to file, as it deems necessary or advisable, such financing statements, mortgages, notices and other instrument or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens and/or Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, evidence or perfect the DIP Liens and/or the Adequate Protection Liens. The Debtors are authorized to and shall execute and deliver promptly upon demand to the DIP Agent and the Prepetition Agent all such financing statements, mortgages, title insurance policies, notices, instruments, and other documents as the DIP Agent or the Prepetition Agent may reasonably request. The DIP Agent and the Prepetition Agent may file a photocopy of this Interim Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien, instrument, or similar document.

20. <u>Maintenance of DIP Collateral and Cash Management System</u>. Until the indefeasible payment in full in cash of all DIP Obligations, and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors are authorized and directed to: (a) insure the DIP Collateral as required under the DIP Documents; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may

be entered by the Court which has first been agreed to by the Required DIP Lenders, or as otherwise agreed to by the Required DIP Lenders, in their reasonable discretion, or as otherwise required by the DIP Documents.

21.     Disposition of DIP Collateral; Rights of DIP Agent and DIP Lenders. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral outside the ordinary course of business without the prior written consent of the Required DIP Lenders and the proceeds of any such sale, transfer, lease, encumbrance or other disposition shall be turned over to the DIP Agent to satisfy any outstanding DIP Obligations in accordance with the terms of the DIP Credit Agreement.

22.     Postpetition Financing Termination. On the earlier to occur of Commitment Termination Date and the Termination Declaration Date, (a) all DIP Obligations shall be immediately due and payable, (b) all commitments to extend credit under the DIP Facility will terminate, and (c) all authority to use Cash Collateral shall cease, provided, however, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein.

23.     Events of Default. The occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein, including, but not limited to, the failure to comply with any of the terms of this Interim Order, shall constitute an event of default under this Interim Order, unless waived in writing by the Required DIP Lenders (the "Events of Default").

24.     Rights and Remedies Upon Event of Default. Immediately upon the occurrence and during the continuation of an Event of Default, (a) the DIP Agent, with the consent of the Required DIP Lenders, may, or upon the request of the Required DIP Lenders, shall be entitled to declare (i) all DIP Obligations owing under the DIP Documents to be immediately due and

payable, (ii) the termination or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, and/or (iii) the termination of the DIP Credit Agreement and any other DIP Document as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (b) the DIP Agent and/or the Prepetition Agent (at the request of or with the consent of the Required DIP Lenders or in the case of the Prepetition Facility, the Required Lenders) may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral, except as provided in paragraph 11 hereof during the Remedies Notice Period defined below (any such declaration shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by email, facsimile (or other electronic means) to counsel to the Debtors, counsel to the Prepetition Agent, the Lender Group Advisors, counsel to any Statutory Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is received by counsel to the Debtors prior to 5:00 p.m. prevailing eastern time shall be referred to herein as the "Termination Declaration Date"). The DIP Obligations shall be due and payable, without notice or demand, and the ability of the Debtors to use Cash Collateral shall automatically terminate or be reduced or restricted on the Termination Declaration Date, as provided in the applicable Termination Declaration except as provided in paragraph 11 during the Remedies Notice Period. For the period that is three (3) business days after the Termination Declaration Date (the "Remedies Notice Period"), the Debtors and any Statutory Committee shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred or enters an order precluding the exercise of remedies, the automatic stay shall automatically be terminated at the end of the

Remedies Notice Period without further notice or order and the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders shall be permitted to exercise all remedies set forth in the DIP Credit Agreement, the DIP Documents, the Prepetition Credit Agreement and the Prepetition Credit Documents, as applicable, and as otherwise available at law or in equity against the DIP Collateral and/or Prepetition Collateral, as the case may be, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interests in the DIP Collateral and Prepetition Collateral or any other rights and remedies granted to the DIP Agent and the DIP Lenders with respect thereto pursuant to the DIP Credit Agreement, DIP Documents, this Interim Order or applicable law. Upon expiration of the Remedies Notice Period, the DIP Agent and the DIP Lenders may, subject to the terms and conditions of the Intercreditor Agreement or the DIP Credit Agreement, (a) (i) sweep any or all of the cash in the DIP Proceeds Controlled Account (as defined in the DIP Credit Agreement) and any other account subject to a Control Account Agreement (as defined in the DIP Credit Agreement) to prepay the DIP Facility and/or (ii) sweep any or all of the cash in the DIP Controlled Accounts (as defined in the DIP Credit Agreement) to prepay the DIP Facility, and (b) foreclose on all or any portion of the DIP Collateral, collect accounts receivable and apply the proceeds thereof to the obligations, occupy the Debtors' premises, execute going out of business sales or otherwise exercise remedies against the DIP Collateral permitted by applicable nonbankruptcy law. Upon the occurrence and during the continuance of an Event of Default, in addition to all rights and remedies available to the DIP Lenders at law and in equity and all rights and remedies granted to the DIP Lenders pursuant to the terms of this Interim Order and the DIP Facility Documents, upon a direction from the DIP Agent, the Debtors shall pursue an immediate

sale of the DIP Collateral pursuant to the provisions of Section 363 of the Bankruptcy Code in a manner satisfactory to the Required DIP Lenders and the proceeds of such sale shall be used to pay the obligations owing to the DIP Lenders in accordance with the DIP Facility.

25.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.  The Prepetition Agent, each member of the Lender Group, DIP Agent and DIP Lenders each have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent and the DIP Lenders are each entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or created hereby.  Any liens or claims granted to the DIP Agent or DIP Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

26.     Proofs of Claim.  The DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders (with respect to the Prepetition Obligations) will not be required to file proofs of claim or requests for administrative expenses in any of the Cases or any Successor Cases, and the Debtors' Stipulations in paragraph E of this Interim Order, and the other provisions of this Interim Order relating to the claims granted herein, shall be deemed to constitute a timely filed

proof of claim or request for administrative expense as applicable. Any order entered by the Court in connection with the establishment of a bar date for any claim (including without limitation administrative claims) in the Cases or any Successor Cases shall not apply to the DIP Agent, the DIP Lenders, Prepetition Agent, or the Prepetition Lenders with respect to claims arising out of or relating to the Prepetition Obligations.

27.    Rights of Access and Information. Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Documents or the Prepetition Agents and Prepetition Lenders under the Prepetition Credit Documents, the Debtors are authorized to afford representatives, agents and/or employees of the Prepetition Agent, the Prepetition Lenders, DIP Agent and DIP Lenders reasonable access to the Debtors' premises and their books and records in accordance with the Prepetition Credit Documents and DIP Documents, as the case may be, and are authorized to reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.

28.    Carve Out.

(a)    *Carve Out.* As used in this Interim Order, the "Carve Out" means the following expenses: (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (ii) all fees and disbursements payable to the information officer in connection with Canadian Case as determined by order of the Canadian Court (as such terms are defined in the DIP Agreement); and (iii) subject to the terms and conditions of this Interim Order, all professional fees and disbursements incurred by (x) legal counsel for the Parent in the Canadian Case, and (y) the Debtors and any Statutory Committee for any attorneys and a single financial advisor, for the Debtors and any Statutory Committee, respectively, retained by final order of the Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated)

pursuant to sections 327 or 1103(a) of the Bankruptcy Code (the "Case Professionals") to the extent allowed or later allowed by order of the Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated) under sections 328, 330 and/or 331 of the Bankruptcy Code and any interim compensation procedures order (the "Allowed Professional Fees"), but solely to the extent such Allowed Professional Fees are within the corresponding amounts set forth in the Budget and were reflected as estimated fees and expenses of Case Professionals in the most recent Budget delivered by the Debtors to the DIP Agent prior to the date that the fees were incurred; provided, however, that, following a notice of an Event of Default under the DIP Facility delivered by the DIP Agent to the Debtors, the amount of the Carve Out shall not exceed $250,000, plus the amount of any compensation or reimbursement of budgeted expenses and fees incurred, awarded or paid prior to the occurrence of an Event of Default in respect of which the Carve Out is invoked.

(b)     *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.* The DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed (i) to obligate the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders, in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out if actual Allowed Professional Fees are higher in fact than reflected in the Budget or estimated fees and disbursements of Case Professional reflected in the Budget; or (iii) as consent to the allowance of any professional fees or expenses of any Case Professionals. Any funding of

the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code and applicable law. The DIP Agent's, the DIP Lenders', the Prepetition Agents and Prepetition Lenders' liens and claims granted pursuant to this Interim Order shall, however, be subject and subordinate to the Carve Out as set forth in this Interim Order.

29. <u>Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and Carve Out</u>. The DIP Facility, the DIP Collateral, the Cash Collateral, and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Agent's, the DIP Lenders', the Prepetition Agent's, or the Prepetition Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred except to contest that an Event of Default has occurred; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP Agent; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (d) incurring Indebtedness (as defined in the DIP Credit Agreement) except to the extent permitted under the DIP Credit Agreement; (e) investigating, litigating, objecting to, contesting or challenging in any way or raising any defenses to the claims, liens, or interests (including interests in the Prepetition Collateral or DIP Collateral), mortgages or security interests held by or on behalf of the Prepetition Agents, any Prepetition Lender, the DIP Agent or any DIP Lender; (f) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Agents, any Prepetition Lender, the DIP Agent or any DIP Lender, or any of their respective officers, directors, agents or employees; (g) investigating, litigating, objecting to,

contesting or challenging in any way or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations or DIP Obligations or the validity, extent, amount, perfection, priority or enforceability of the Prepetition Liens or DIP Liens granted or purported to be granted as security for such indebtedness or any other rights or interests or replacement liens with respect thereto or any other rights or interests of the Prepetition Agents, Prepetition Lenders, DIP Agent or DIP Lenders under the DIP Facility or Prepetition Facility; or (h) seeking to subordinate or recharacterize indebtedness under the DIP Credit Agreement or the Prepetition Credit Agreement. Notwithstanding the foregoing, the DIP Facility, the DIP Collateral, the Cash Collateral, and the Carve Out may be used in an amount not to exceed $50,000 in the aggregate for Allowed Professional Fees incurred by any Statutory Committee to investigate the validity, enforceability, perfection, priority or extent of the Prepetition Liens or claims within sixty (60) days following the appointment of the Statutory Committee.

30.     <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.  A Statutory Committee, if granted standing, and, solely if no Statutory Committee is appointed, any other party in interest granted standing (other than the Debtors and their successors) by the Court, may seek to avoid, object to or otherwise challenge the findings or Debtors' Stipulations regarding (a) the validity, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition Agents or any Prepetition Lender or (b) the validity, allowability, priority, fully secured status or amount of the Prepetition Obligations. A party, including any Statutory Committee, if granted standing, must commence, as appropriate, a contested matter or adversary proceeding raising such claim, objection, defense, or other challenge, including, without limitation, any claim against the Prepetition Agents or any Prepetition Lender in the nature of a

setoff, counterclaim or defense to the applicable Prepetition Obligations or the Prepetition Liens (each, a "Challenge") within the earlier of: (i) with respect to any Statutory Committee, sixty (60) calendar days from the formation of the Statutory Committee by the U.S. Trustee, and (ii) with respect to other parties in interest (other than a Statutory Committee and the Debtors and their successors) with requisite standing, seventy-five (75) calendar days following the date of entry of the Interim Order (together, the "Challenge Period"). The applicable Challenge Period may only be extended with the written consent of the Required Lenders. Upon the expiration of the Challenge Period (the "Challenge Period Termination Date"), without the filing of a Challenge (or if any such Challenge is filed and overruled): (A) any and all such Challenges by any party (including, without limitation, any Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Cases), shall be deemed to be forever waived and barred, and (B) all of the Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition Agent's and each Prepetition Lender's, claims, liens, and interests shall be of full force and effect and forever binding upon all the Debtors' estate and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases. To the extent that a Challenge is timely filed but does not expressly challenge all of the Debtors' Stipulations, or to the extent any creditor, interest holder and other party interest does not file any timely Challenge, all such unchallenged Debtors' Stipulations shall be of full force and effect and forever binding upon all the Debtors' estate and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases, notwithstanding any timely-filed Challenge.

31.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

32.     Section 506(c) Claims.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders or any of their respective claims, the DIP Collateral or the Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the affected DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lender, and no such consent shall be implied, directly or indirectly, from any action, inaction, or acquiescence by any such agents or lenders.

33.     No Marshaling/Applications of Proceeds.  The DIP Agent, DIP Lenders, the Prepetition Agents, and Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.

34.     Section 552(b).  The DIP Agent, DIP Lenders, Prepetition Agents, and Prepetition Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agents or any Prepetition Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

35.     Discharge Waiver.  The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of sections 524 and/or 1141(d) of the

Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtors shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or such sale, of all DIP Obligations.

36.     <u>Rights Preserved.</u>

(a)     Notwithstanding anything herein to the contrary, in the case of an Event of Default under the DIP Credit Agreement, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the DIP Agent's, any DIP Lender's, the Prepetition Agents' or the Prepetition Lenders' right under the Bankruptcy Code or under non-bankruptcy law including, but not limited to, the right (i) to seek any other or supplemental relief in respect of any Debtors, including the right to seek additional adequate protection for the Prepetition Obligations (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection); (ii) to request modification of the automatic stay of section 362 of the Bankruptcy Code; (ii) to request dismissal of any of the Cases or any Successor Cases, conversion of any of the Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers; or (iii) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.

(b)     Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, DIP Lenders, Prepetition Agents, and Prepetition Lenders are preserved.

37.     <u>No Waiver by Failure to Seek Relief.</u>  The failure of the DIP Agent, any DIP Lender, any Prepetition Agent or Prepetition Lender to seek relief or otherwise exercise their

respective rights and remedies under this Interim Order, the DIP Documents, the Prepetition Credit Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the applicable DIP Agent, DIP Lender, Prepetition Agent or any Prepetition Lender.

38. <u>Binding Effect of Interim Order</u>. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Lenders, all other creditors of the Debtors, any Statutory Committee or any other court appointed committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any of the Cases or any Successor Cases.

39. <u>No Modification of Interim Order</u>. Until and unless the DIP Obligations and Prepetition Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) (with full cash collateral provided for any contingent obligation that have not yet matured) and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the Required DIP Lenders and Required Lenders (i) any modification, stay, vacatur or amendment to this Interim Order (and no such consent shall be implied by any other action, inaction or acquiescence of Required DIP Lenders or Required Lenders); or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever,

including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Cases or any Successor Cases equal or superior to the DIP Superpriority Claim or Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the Required DIP Lenders and the Required Lenders, any order allowing use of Cash Collateral (other than this Interim Order or the Final Order); and (c) without the prior written consent of the Required DIP Lenders and the Required Lenders, any lien on any of the DIP Collateral or Prepetition Collateral with priority equal or superior to the DIP Liens, Prepetition First Liens, or Adequate Protection Liens, except as specifically provided in the DIP Documents. Notwithstanding anything contained in this paragraph 39 to the contrary, the Debtors may incur further financing (written notice of which shall be delivered to certain Lenders or Hedge Bank (as those terms are defined in the Prepetition Credit Documents) signatory to the plan support agreement ("Consenting Lenders") dated as of December 15, 2009, among the Debtors, the Prepetition Agent, and the Consenting Lenders, by email or fax concurrent therewith), provided that concurrently with the delivery of such written notice, the Debtors shall file a motion with the Bankruptcy Court seeking approval for the Debtors to indefeasibly pay in full in cash all DIP Obligations and the Debtor shall within seven (7) days from the date of the delivery of the written notice to the Consenting Lenders and the filing of the approval motion indefeasibly pay in full in cash all DIP Obligations (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) (with full cash collateral provided for any contingent obligation that have not yet matured) (which may be paid through debtor-in-possession financing providing liens and claims to the replacement lender that are subordinate in all manner and respect to the liens and claims associated with the Prepetition Facility in accordance with the terms of an

intercreditor agreement by and between the replacement lender(s) and the Lender Parties (as that terms is defined in the Prepetition Credit Documents), (satisfactory in all respect to the Prepetition Lenders and the Prepetition Agent),[9] provided, however, that if the Bankruptcy Court is unable to schedule a hearing within such seven (7) day period to approve the payment required herein, on the earliest date available for the Bankruptcy Court to schedule a motion for approval of the payment (in any event no later than fifteen (15) days from the date of the delivery of the written notice and the filing of the approval motion), and on the condition that the Lender Parties, Hedge Bank (as those terms are defined in the Prepetition Credit Documents) and Prepetition Agent continue to receive at least the same level of adequate protection as previously authorized by the Court) and that a plan of reorganization and disclosure statement shall be contemporaneously filed with the Court, which plan of reorganization shall provide, among other things, (A) for an effective date within 150 days of the Petition Date; (B) the indefeasible payment in full in cash as of the effective date of all Prepetition Obligations under the Prepetition Facility; (C) that the funding sponsor of such plan of reorganization provide reasonable evidence to the Prepetition Lenders and Prepetition Agent of committed funding for the plan of reorganization not subject to any financing or requirement of due diligence contingency; and (D) provide that any default thereunder shall result in the vacating of the automatic stay so as to permit the exercise of rights and remedies of the Lender Parties, Hedge Bank (as those terms are defined in the Prepetition Credit Documents) and the Prepetition Agent without any requirement of further notice, court approval (including Bankruptcy Court approval) or marshaling.

---

[9] Without limitation, such intercreditor agreement shall prohibit the replacement lender from exercising any rights or remedies with respect to the Collateral granted pursuant to the new financing unless and until the Prepetition Lenders are indefeasibly paid in full in cash pursuant to the Prepetition Credit Documents.

40.  Interim Order Controls.  In the event of any inconsistency between the terms and conditions of the DIP Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

41.  Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; (d) discharging the Debtors; or (e) pursuant to which this Court abstains from hearing any of the Cases or any Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lenders, Prepetition Agents and Prepetition Lenders pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in any of the Cases, in any Successor Cases, or following dismissal of any of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all DIP Obligations and Prepetition Obligations have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Facility are terminated.  The terms and provisions of the DIP Credit Agreement concerning the indemnification of the DIP Agent and DIP Lenders shall continue in any of the Cases, in any Successor Cases, following dismissal of any of the Cases or any Successor Cases, and following termination of the DIP Documents and/or the repayment of the DIP Obligations.

42.  Final Hearing.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for [_____] 2010 at [____] [_].m. (Eastern Time) before the Honorable [_____], United States Bankruptcy Judge, Courtroom [__] on the [__] floor of the United States Bankruptcy Court for the District of

Delaware. On or before [_____], the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with a copy of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; and (c) counsel for the Prepetition Lenders and any Statutory Committee. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on [_____] at 4:00 p.m. (Eastern Time), which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, attn: Paul V. Possinger, Esq., Proskauer Rose LLP, Three First National Plaza, 70 West Madison, Suite 3800, Chicago, IL 60602, and attn: Mark D. Collins, Esq., Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801; (ii) counsel to any Statutory Committee; (iii) counsel to the DIP Lenders and Lender Group, attn: Jonathan B. Alter, Esq., Bingham McCutchen LLP, One State Street, Hartford, CT 06103, Frederick F. Eisenbiegler, Esq., Bingham McCutchen LLP, 399 Park Avenue, New York, NY 10022, and attn: Laura Davis Jones, Pachulski, Stang, Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19889-8705; (iv) counsel to the DIP Agent, attn: Chris McDermott, and attn: Alexander T. Lin, Cadwalader, Wickersham & Taft, LLP, 227 West Trade Street, Charlotte, North Carolina 28202 and (v) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801.

43. <u>Effect of this Interim Order</u>. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

44.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: _____, 2009
       Wilmington, Delaware

_____
United States Bankruptcy Judge

# EXHIBIT A

Budget

TLC Vision Corporation
Summary DIP Budget
12/19/09

($000's)

| | | Actual | Prelim | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week # | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | |
| | Week Beginning Date | 12/07/09 | 12/14/09 | 12/21/09 | 12/28/09 | 01/04/10 | 01/11/10 | 01/18/10 | 01/25/10 | 02/01/10 | 02/08/10 | 02/15/10 | 02/22/10 | 03/01/10 | 03/08/10 | 03/15/10 | 03/22/10 | 03/29/10 | 04/05/10 | 04/12/10 | 04/19/10 | 04/26/10 | 05/03/10 | 05/10/10 | 05/17/10 | |
| Line # | Week Ending Date | 12/11/09 | 12/18/09 | 12/25/09 | 01/01/10 | 01/08/10 | 01/15/10 | 01/22/10 | 01/29/10 | 02/05/10 | 02/12/10 | 02/19/10 | 02/26/10 | 03/05/10 | 03/12/10 | 03/19/10 | 03/26/10 | 04/02/10 | 04/09/10 | 04/16/10 | 04/23/10 | 04/30/10 | 05/07/10 | 05/14/10 | 05/21/10 | |
| 1 | Operating Receipts | 2,636 | 2,463 | 3,138 | 2,249 | 1,494 | 3,070 | 4,412 | 4,104 | 3,482 | 3,010 | 3,222 | 3,303 | 2,934 | 2,704 | 2,575 | 2,856 | 2,958 | 2,561 | 7,381 | 2,326 | 2,309 | 2,429 | 2,313 | 2,408 | 67,237 |
| 2 | Proceeds from Asset Sales | | - | - | - | - | - | - | 8,729 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 8,729 |
| 3 | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 4 | Variable Costs | (381) | (398) | (1,607) | (1,044) | (1,447) | (879) | (1,481) | (722) | (1,414) | (776) | (1,081) | (943) | (1,086) | (784) | (1,013) | (460) | (971) | (1,031) | (624) | (535) | (673) | (800) | (934) | (544) | (20,960) |
| 5 | Surgeons and Payroll | (1,698) | (243) | (2,131) | (156) | (1,757) | (243) | (2,440) | (152) | (2,263) | (152) | (2,075) | (152) | (2,027) | (152) | (1,971) | (152) | (1,986) | (152) | (1,866) | (152) | (1,821) | (152) | (1,844) | (207) | (24,022) |
| 6 | Other Operating Expenses | (269) | (441) | (1,285) | (458) | (229) | (394) | (946) | (1,177) | (335) | (405) | (482) | (1,153) | (244) | (375) | (468) | (972) | (1,218) | (342) | (438) | (380) | (979) | (433) | (428) | (418) | (13,561) |
| 7 | Professional Fees | (1,290) | (475) | (991) | - | - | - | (2,692) | - | - | - | (2,332) | - | - | - | (2,152) | - | - | - | - | (2,373) | - | - | - | (1,025) | (11,435) |
| 8 | Interest, Fees and Other | 1,258 | (115) | (542) | (1,225) | (66) | 175 | 9,200 | (8,480) | (1,236) | 139 | (34) | 391 | (1,670) | (42) | (16) | 468 | (1,532) | (42) | (16) | (110) | (233) | (619) | (16) | (110) | (6,612) |
| 9 | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10 | Net Cash Flows | 151 | 792 | (3,587) | (635) | (2,004) | 1,729 | 6,053 | 1,301 | (1,766) | 1,616 | (2,682) | 1,747 | (2,093) | 1,351 | (3,046) | 1,720 | (2,749) | 995 | 4,417 | (1,223) | (1,596) | 425 | (908) | 105 | (631) |
| 11 | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 12 | TLC Controlled Operating Accounts: | | | | | | | | | | | | | | | | | | | | | | | | | |
| 13 | Beginning Cash Balance | 1,493 | 1,644 | 2,436 | 6,349 | 5,714 | 3,710 | 5,439 | 3,992 | 5,293 | 3,527 | 5,343 | 8,932 | 10,679 | 8,587 | 9,937 | 6,891 | 8,611 | 5,862 | 6,857 | 11,274 | 10,050 | 8,454 | 8,879 | 7,971 | |
| 14 | Net Cash Flows | 151 | 792 | (3,587) | (635) | (2,004) | 1,729 | 6,053 | 1,301 | (1,766) | 1,616 | (2,682) | 1,747 | (2,093) | 1,351 | (3,046) | 1,720 | (2,749) | 995 | 4,417 | (1,223) | (1,596) | 425 | (908) | 105 | |
| 15 | DIP Loan Borrowings / (Repayments) | | | 7,500 | - | - | - | (7,500) | - | - | - | 6,271 | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| 16 | Controlled Cash (1) | 1,644 | 2,436 | 6,349 | 5,714 | 3,710 | 5,439 | 3,992 | 5,293 | 3,527 | 5,343 | 8,932 | 10,679 | 8,587 | 9,937 | 6,891 | 8,611 | 5,862 | 6,857 | 11,274 | 10,050 | 8,454 | 8,879 | 7,971 | 8,076 | |
| 17 | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 18 | DIP Loan | | | | | | | | | | | | | | | | | | | | | | | | | |
| 19 | Beginning | | - | - | 7,500 | 7,500 | 7,500 | 7,500 | - | - | - | - | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | |
| 20 | Borrowings / (Repayments) | | - | 7,500 | - | - | - | (7,500) | - | - | - | 6,271 | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| 21 | Ending | | - | 7,500 | 7,500 | 7,500 | 7,500 | - | - | - | - | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | 6,271 | |
| 22 | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 23 | Pre-Petition Credit Facility Total (2) | 107,240 | 107,420 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | 107,677 | |

Notes:
(1) Controlled Cash excludes partner accounts not under TLC control.
(2) Includes Swap, LCs and Fees.