## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) |
| TLC Vision (USA) Corporation, *et al.*,[1] | ) Case No. 09-14473 (KG) <br> ) Joint Administration Requested |
| Debtors. | ) <br> ) **Hearing Date: To Be Determined** <br> ) **Objection Deadline: To Be Determined** |

### DEBTORS' MOTION FOR ENTRY OF ORDER (A) AUTHORIZING THE SALE OF THE DEBTORS' CANADIAN OPERATIONS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (B) GRANTING CERTAIN RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") request entry of an order substantially in the form attached hereto as **Exhibit A** (the "Sale Order"): (a) authorizing the sale of TLC Vision Corporation's interest in laser eye surgery centers and operation in Canada (as more particularly described below) to 7289499 Canada Inc. (the "Purchaser") free and clear of all liens, claims, encumbrances and other interests, pursuant to that certain purchase agreement (as amended from time to time, the "Purchase Agreement"[2], a current copy of which is attached as **Exhibit 1** to the Sale Order and incorporated herein by reference) between the Purchaser and Debtor TLC Vision Corporation ("TLC Vision" or the "Seller"); and (b) granting certain related relief (the "Sale Motion"). In support of this Sale Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in the cases, along with the last four digits of each Debtor's federal tax identification number and address, are: TLC Vision (USA) Corporation (6220) 16305 Swingley Ridge Road, Chesterfield, MO 63017; TLC Vision Corporation (1150) 5280 Solar Drive, Suite 300, Mississauga, Ontario, L4W 5M8; and TLC Management Services, Inc. (0374) 1209 Orange Street, Wilmington, DE 19801.

[2] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Purchase Agreement.

## Jurisdiction

1. This Court has jurisdiction over this Sale Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and rule-based predicates for the relief requested herein are sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

4. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Sale Motion, no official committees have been appointed or designated.

5. The factual background relating to the Debtors' commencement of the Chapter 11 Cases is set forth in detail in the *Declaration of Michael F. Gries, Chief Restructuring Officer for the Debtors, in Support of First Day Pleadings* (the "Gries Declaration") filed on the Petition Date and incorporated herein by reference.

**A. The Canadian Refractive Centers.**

6. Debtor TLC Vision is an entity organized under the laws of Canada. TLC Vision holds 75% of the outstanding equity securities of TLC The Laser Centre (Moncton) Inc.

2

("Moncton"), which is also organized under the laws of Canada. Moncton is not a debtor in the Chapter 11 Cases. Together, TLC Vision and Moncton own all of the assets necessary to operate all of the refractive laser eye surgery centers that are affiliated with the Debtors and located in Canada (collectively, the "Canadian Operations"), including facilities in Moncton, New Brunswick and Halifax, Nova Scotia.

7. The Purchaser and its affiliates currently operate a number of laser vision correction clinics across Canada. The Seller received an expression of interest from the Purchaser in May, 2009. Over the course of the next several months the Purchaser conducted due diligence on the Canadian Operations. The parties negotiated a letter of intent which was signed on November 12, 2009. During the course of negotiations with the Purchaser, the Seller received interest from two other potential purchasers of the business, both of whom were operators of laser vision correction clinics in Ontario, but on a smaller scale than the Purchaser. The Seller allowed those interested parties to conduct due diligence on the Canadian operations. One of those parties submitted a proposal that would have resulted in a much lower purchase price than that offered by the Purchaser and would have been subject to a financing contingency. After further negotiations with that party, the party refused to increase its offer. The other declined to make an offer for the Canadian Operations. The Seller has received no other indication of interest for the sale of its Canadian Operations.

8. The sale of the Canadian Operations is a critical component of the Debtors' restructuring strategy. The Debtors intend to cease eye care operations in Canada and wind down the Seller as part of its restructuring. Central to this strategy is the divestiture of the Seller's remaining Canadian surgical centers and their equity interests in Moncton. As a result of the sale, the Debtors, among other things, will be able to consolidate their supply base for and

3

1076/74009-001 Current/15974509v7
RLF1 3518906v.1

streamline their U.S. operations, thus realizing significant operational efficiencies for their remaining businesses. This sale will also allow the Debtors to monetize the Canadian Operations at a very advantageous purchase price and provide the Debtors with significant liquidity to be used to reduce their outstanding debt. The Purchaser will also be assuming significant contracts and liabilities associated with the Canadian Operations, minimizing any remaining claims against TLC Vision Corporation in its chapter 11 case.

**B.  Proposed Sale of Canadian Operations Pursuant to the Purchase Agreement.**

9.  The Debtors propose to sell the Canadian Operations to the Purchaser via a private sale and without an auction on the terms and conditions of the Purchase Agreement. The following chart[3] provides a summary of the material terms and conditions of the proposed sale, as set forth in the Purchase Agreement, and highlights additional disclosures required by the Local Rules:[4]

| | |
|---|---|
| Selling Debtor | TLC Vision Corporation |
| Selling Non-Debtor | N/A |
| Purchaser | 7289499 Canada Inc. This entity is not an insider of the Debtors. |
| Consideration | $9,700,000 Canadian (subject to adjustment) plus value of Assumed Liabilities |
| Good Faith Deposit Local Rule 6004-1(b)(iv)(F) | None |
| Purchased Assets | TLC Vision's equity interests in Moncton. |
| | The other Purchased Assets necessary to operate the Canadian Operations, as set forth in Section 2.1 of the Purchase Agreement. |
| | Additionally, just prior to closing and as a condition thereto, the Seller will assign certain noncompete rights to Moncton. |

---

[3] To the extent that the summary of the terms and conditions of the Purchase Agreement set forth in the Sale Motion conflicts with the terms and conditions of the Purchase Agreement, the terms and conditions of the Purchase Agreement shall control.

[4] Local Rule 6004-1(b)(iv) requires that the Sale Motion highlight certain provisions related to a proposed sale.

| | |
|---|---|
| Assumed Liabilities | As set forth in Sections 4.1 and 4.3 of the Purchase Agreement |
| Excluded Liabilities | As set forth in Section 4.2 of the Purchase Agreement |
| Closing Date | February 16, 2009, or otherwise as determined by reference to Sections 9.1 of the Purchase Agreement |
| Closing Conditions Local Rule 6004-1(b)(iv)(E) | As set forth in Sections 8.1 and 8.2 of the Purchase Agreement |
| Termination of the Sale Agreement | As set forth in Section 10.1 of the Purchase Agreement |
| Private Sale Local Rule 6004-1(b)(iv)(D) | For the reasons set forth in paragraphs 30-37 of this Sale Motion, the proposed sale is a private sale without an auction. |
| Releases Local Rule 6004-1(b)(v)(C) | None |
| Sale to Insider Local Rule 6004-2(b)(iv)(A) | No |
| 6004(h) Local Rule 6004-1(b)(iv)(O) | For reasons set forth in paragraph 38 of this Sale Motion, the proposed Sale Order grants a waiver of the 14-day stay period otherwise required by Bankruptcy Rule 6004(h). |
| Indemnification of Purchaser | As set forth in Section 11.3 of the Purchase Agreement |
| Interim Agreements Local Rule 6004-1(b)(v)(G) | The Debtors have agreed to provide post sale services to the Purchaser in accordance with the Transitional Services Agreement (the "TSA") attached as Schedule 8.1(n) to the Purchase Agreement, the terms of which include certain operational, information technology and marketing services for specified periods after closing.. The Debtors have also agreed to grant a five year license (the "License Agreement"), with options for up to three additional one year terms, to use certain trademarks of the Debtors in Canada and have agreed to grant a license (the "Pharos License Agreement") to certain software of the Debtors. The parties have also agreed to grant each other certain non-competition and non-solicitation covenants on closing pursuant to a Non-Competition and Non-Solicitation Agreement (the "Non-Competition Agreement"). In the event of any inconsistency between the terms of such agreements and the terms of the agreements as described herein, the terms of such agreements shall control. |
| Retention of Records Local Rule 6004-2(b)(iv)(J) | Pursuant to Section 12.1 of the Purchase Agreement, TLC Vision shall retain access to its records. |

## Relief Requested

10. The Debtors seek entry of the Sale Order, which approves and authorizes the Debtors to execute and perform under the Purchase Agreement pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006.

## Basis for Relief

### A. The Court Should Approve the Sale of the Debtors' Canadian Operations Pursuant to Section 363(b) of the Bankruptcy Code.

11. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when a sale or disposition of property of a debtor's estate should be authorized, courts in the Third Circuit generally authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

12. Courts in this district have consistently held that the sale of debtor assets outside the ordinary course of business is appropriate if: (a) there is a sound business purpose for the sale; (b) the proposed sale price is fair; (c) the debtor has provided interested parties with adequate and reasonable notice; and (d) the buyer has acted in good faith. *See In re Exaeris, Inc.*, 380 B.R. 741 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at * 7 (D. Del. 2002); *Hudson Ry.*, 124 B.R. at 176.

13. Moreover, if a valid business justification exists for the sale of property of the estate, a debtor's decision to sell property out of the ordinary course of business enjoys a strong

1076/74009-001 Current/15974509v7
RLF1 3518906v.1

presumption "that in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008) (stating that directors enjoy a presumption of honesty and good faith with respect to negotiating and approving a transaction involving a sale of assets). Parties objecting to a debtor's decision to sell its property of the estate must make a showing of "bad faith, self-interest or gross negligence." *Integrated Res.*, 147 B.R. at 656; *see also Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Accordingly, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

14. The Debtors decided to sell the Canadian Operations, including their equity interests in Moncton, after thorough consideration of the terms of the Purchase Agreement and all other viable alternatives. The Debtors will be able to reduce their overall cost structure and increase their operational efficiency by closing the Canadian Operations (which generate a net loss). The Debtors will strengthen their U.S. operations by consolidating their remaining Canadian assets into their U.S. operations, which will enable the Debtors to maintain and enhance critical patient, doctor and supplier relationships. Finally, the Debtors will obtain the benefit of significant cash generated by the sale, which cash will significantly reduce the Debtors' debt load.

7

15.     The Debtors have worked with their advisors to determine an appropriate price range for the Canadian Operations and believe that the Purchase Price is fair and reasonable. The Debtors' management and financial advisors will be able to provide evidence of the appropriateness of the Purchase Price at any hearing on the Sale Motion.

16.     Accordingly, the proposed transaction is a sound exercise of the Debtors' business judgment and this Court should authorize the Debtors to execute and perform under the Purchase Agreement and all related documents and agreements in accordance with section 363(b) of the Bankruptcy Code.

**B.    The Court Should Authorize the Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances and other Interests Pursuant to Section 363(f) of the Bankruptcy Code.**

17.     As set forth in the Purchase Agreement, the Debtors seek to sell the Purchased Assets free and clear of all liens, claims, encumbrances and other interests (except the Permitted Liens) pursuant to section 363(f) of the Bankruptcy Code. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of any interest in such property if:

(1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)  such entity consents;

(3)  such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4)  such interest is in bona fide dispute; or

(5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, a debtor that satisfies any one of its five sub-sections should be authorized to effectuate a sale "free and clear" of liens and interests. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793

8

(Bankr. D. Del. 2002); Decora, 2002 WL 32332749, at *7; *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) does not apply. *See In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001).

18. The Debtors believe that one or more of the tests of section 363(f) is satisfied with respect to the sale of the Purchased Assets. The Debtors believe that section 363(f)(2) of the Bankruptcy Code is satisfied because the secured lenders holding liens on the Purchased Assets will consent to a release of all liens in accordance with the Purchase Agreement. Moreover, sales free and clear of liens and encumbrances are permissible where lien claimants can be compelled to accept money satisfaction of their claims in legal or equitable proceedings; e.g., pursuant to the cramdown provision of section 1129(b)(2)(A) of the Bankruptcy Code. The Debtors believe that, absent consent of any creditor with a lien on or security interest in the Purchased Assets, this provision of the Bankruptcy Code would also apply. Accordingly, the Debtors request that the Purchased Assets be sold to Purchaser free and clear of all liens, claims, security interests, and encumbrances (except the Permitted Liens (as defined in the Purchase Agreement)).

## C. The Assumption And Assignment of Purchased Contracts Satisfies Section 365 of the Bankruptcy Code.

19. To facilitate and effect the Sale of the Canadian Operations to the Purchaser, the Debtors seek authorization to assume and assign to the Purchaser the Purchased Contracts, which the Purchaser has identified in the Purchase Agreement. In order to provide counterparties to the Purchased Contracts with adequate notice of such assumption and proposed adequate cure amounts (the "Cure Amounts"), the Debtors, no later than ten (10) days prior to the hearing on

9

this Motion, shall file with this Court and serve on all non-debtor parties to each Purchased Contract a schedule of cure obligations (the "Contract & Cure Schedule") that: (a) identifies the Purchased Contracts and the amount, if any, that the Debtors propose to pay to cure each Assumed Contract pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts"); and (b) provides each non-debtor counterparty to each Purchased Contract with information necessary for such party to file and serve an objection to assumption of such Purchased Contract prior to the Sale Hearing.

20. Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a). Upon finding that a debtor has exercised proper business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code. *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18,25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

21. The assumption and assignment of the Purchased Contracts to the Purchaser is in the best interests of the Debtors' estates and a proper exercise of the Debtors' business judgment. In addition to maximizing the consideration received in exchange for the Sale, it also allows the Debtors to avoid rejection damages that otherwise would accrue if those contracts or leases were to be rejected.

22. Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor in possession may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2). The meaning of

10

"adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

23. Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

24. At and after the Sale Hearing, the Debtors and the Purchaser will be prepared to proffer testimony or present evidence to demonstrate the financial credibility, willingness, and ability of the Purchaser to perform under the Purchased Contracts. The Purchaser, therefore, will provide the Court and other interested parties with the opportunity to evaluate its ability to provide adequate assurance of future performance under the Purchased Contracts, as required by section 365 of the Bankruptcy Code. Accordingly, the Debtors respectfully request that at the conclusion of the Sale Hearing, the Court approve the assumption and assignment of the Purchased Contracts, to be effective upon entry of the Sale Order.

11

25. Notwithstanding any anti-assignment language in any contract or lease to be assumed and assigned, including a change of control provision, the Debtors seek permission to assign such agreement, provided that the Debtors first assume the contract or lease and then provide adequate assurance of future performance by the Purchaser. To facilitate the assumption and assignment of the Purchased Contracts, the Debtors will request at or after the Sale Hearing that the Court find any anti-assignment provisions of the Purchased Contracts, including a change of control provisions, to be unenforceable under section 365(f) of the Bankruptcy Code.[5]

26. Section 365(k) of the Bankruptcy Code provides that assignment by the debtor to an entity of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 365(k). Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any liability for any breach of any assumed and assigned lease or contract after such assignment to and assumption by the Purchaser.

### D. The Court Should Grant the Purchaser Full Protection Afforded to Good Faith Purchasers Pursuant to Section 363(m) of the Bankruptcy Code.

27. The Court should grant the Purchaser the protections afforded to a good faith purchaser under section 363(m) of the Bankruptcy Code. Section 363(m) provides, in relevant part:

---

[5] Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease ... " 11 U.S.C. § 365(f)(1). Section 365(f)(3) further provides that "Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

12

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code thus protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order authorizing the sale is reversed on appeal. Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit has stated that a good faith purchaser is "one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986). To constitute a lack of good faith, a party's conduct in connection with the sale usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

28. Here, there is no fraud or collusion between the Purchaser and the Debtors. the Purchaser conducted extensive due diligence. The Debtors and the Purchaser were represented by separate counsel, engaged in extensive arms' length negotiations, and negotiated a letter of intent prior to negotiating and executing and the definitive Purchase Agreement for which approval is sought in this Sale Motion. The business terms of the proposed transaction are fair and equitable to both Purchaser and Seller.

29. Accordingly, the Debtors request that the Court find and determine that the Purchaser has negotiated and acted at all times in good faith and, as a result, is entitled to the full protections of a good faith purchaser under section 363(m) of the Bankruptcy Code, and that the

13

Purchase Agreement does not constitute an avoidable transaction pursuant to section 363(n) of the Bankruptcy Code.

E. **A Private Sale of the Purchased Assets Is Appropriate Under Bankruptcy Rule 6004.**

30. Bankruptcy Rule 6004(f) allows a debtor to conduct a private sale pursuant to section 363 of the Bankruptcy Code. Specifically, this rule provides that "[a]ll sales not in the ordinary course of business may be by *private sale* or by public auction." Fed. R. Bankr. P. 6004(f)(1) (emphasis added). *See In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del 1981) (holding that manner of sale is within the debtor's discretion); *In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998) (stating that debtor has authority to conduct public or private sales of estate property).

31. A debtor may conduct a private sale if a good business reason to do so exists. *See, e.g., Palermo v. Pritam Realty, Inc. (In re Pritam Reality, Inc.)*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the purchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

32. Courts in this and other districts have approved private sales of estate property pursuant to section 363(b)(1) of the Bankruptcy Code when there has been a valid business reason for not conducting an auction. *See, e.g., In re Visteon Corp.*, Case No. 09-11786 (Bankr.

14

D. Del. July 17, 2009) (approving private sale of 80% of the debtors' equity interest in an affiliated debtor); *Buffets Holdings, Inc.*, Case No. 08-10141 (Bankr. D. Del. Feb. 3, 2009) (approving the private sale of real property for approximately $2.4 million); *In W.R. Grace & Co.*, Case No. 01-01139 (Bankr. D. Del. Dec. 18, 2008) (approving the private sale of real property for approximately $3.8 million); *In re Wellman, Inc.*, Case No. 08-10595 (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex capable of converting recycled carpet into nylon engineered resins for $17.9 million); *In W.R. Grace & Co.*, Case No. 01-01139 (Bankr. D. Del. July 23, 2007) (authorizing private sale of business line which designs and manufactures materials used in catalytic converters to remove pollutants produced by engines for approximately $22 million); *In re Solutia, Inc.*, Case No. 03-17949 (Bankr S.D.N.Y. Dec. 28, 2006) (approving private sale of real property for approximately $7.1 million).

33. Here, the Debtors propose to sell the Purchased Assets to the Purchaser by way of a private sale to avoid the cost and delay associated with conducting a public auction and because the Debtors believe a higher and better bid will not be obtained by an auction. Based on this factor alone, any consideration received from a purchaser other than the Purchaser likely would be significantly lower than the current Purchase Price. The Debtors believe it would be a waste of estate resources to conduct an auction process knowing that no other purchaser would be able to match the value of the proposed transaction. Moreover, the Purchase Agreement provides that the Purchaser has the option to terminate the Purchase Agreement in the event that the Debtors proceed with an auction of the Purchased Assets, and so in the event that an auction is ordered the Debtors would risk losing this transaction.

34. The Purchaser currently operates a business that complements the Canadian Operations and, for that reason, is in a unique position to recognize significant synergistic

1076/74009-001 Current/15974509v7
RLF1 3518906v.1

efficiencies from the sale. There is no other potential bidder that would be able to benefit from these operational efficiencies. As a result, the Purchaser will realize far greater value from the sale than any other entity. The Debtors believe that the Purchase Price reflects the value of these efficiencies and that no competing bidder would have reason to approach, much less match, the Purchase Price.

35. The alternative to the proposed private sale is to market publicly the Canadian Operations and to conduct an auction sale process, which would subject the Debtors' estates to significant market risk. The Purchase Price reflects not only the certainty of private sale, but synergistic benefits from the sale that the Purchaser, and no other bidder, will enjoy. Moreover, the Debtors sought competing offers for the Canadian Operations prior to the commencement of these cases. The only other interested party made a non-binding proposal for far less consideration that would have required significantly more time to close. Accordingly, there is a very low probability that a public sale process would yield an offer that would approach the Purchase Agreement. The amount and certainty of the Purchase Price clearly outweigh any potential value that such a public process would offer.

36. The Debtors believe that further delays in completing the sale will result in continued loss of cash, further deterioration of the Debtors' financial performance and permanent erosion of the Debtors' aggregate intrinsic value. Moreover, patients and employees of the Canadian Operations would face uncertainty regarding the future of the Canadian Operations, which could lead to employee attrition and a negative market response that would jeopardize the Purchase Agreement and permanently erode the value of the Canadian Operations. Under these circumstances, the Purchaser might seek a reduction in the Purchase Price, if it were still interested in the Canadian Operations at all.

16

37. Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Debtors believe that the Purchaser's offer is the highest and best offer for the Canadian Operations, the Debtors request that this Court approve the proposed private sale of the Purchased Assets to the Purchaser and authorize the Debtors to execute and perform under the Purchase Agreement.

### F. Relief Under Bankruptcy Rule 6004(h) is Appropriate.

38. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." However, a court may reduce or waive the fourteen day stay period when there is a sufficient business need to close the transaction. *In re Boscov's, Inc.*, 2008 WL 4975882 (Bankr. D. Del. Nov. 21, 2008) (waiving automatic stay period of 10 days under prior version of Fed. R. Bank. P. 6004). In this case, the Debtors request that the court waive the fourteen day stay otherwise required by Bankruptcy Rule 6004(h) and that the Sale Order be effective and final immediately upon its entry. The Debtors and the Purchaser desire to close the sale as soon as possible after all closing conditions have been met or waived. Accordingly, waiver of the 14-day stay period under Bankruptcy Rule 6004(h) is appropriate.

### Notice

39. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the Steering Committee of Lenders; (d) counsel to the Steering Committee of Lenders; (e) the Securities and Exchange Commission; (f) the Internal Revenue Service; (g) the Toronto Stock Exchange and each Canadian provincial and territorial securities commission; (h) the Office of

the United States Attorney for District of Delaware; (i) the agent to the proposed debtor-in-possession lender; and (j) Harris Bank, as the Debtors' primary deposit bank. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

*[Remainder of page intentionally left blank]*

1076/74009-001 Current/15974509v7
RLF1 3518906v.1

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to execute and perform under the Purchase Agreement and sell the Purchased Assets to Purchaser free and clear of all liens, claims, encumbrances, and other interests (other than Permitted Liens) as set forth in the Purchase Agreement pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code; (b) granting the Purchaser the protections afforded to a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and (c) granting certain related relief.

19

1076/74009-001 Current/15974509v7
RLF1 3518906v.1

Dated: December 21, 2009
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**

_/s/ Chun I. Jang_

Mark D. Collins (DE Bar No. 2981)
Michael J. Merchant (DE Bar No. 3854)
Chun I. Jang (DE Bar No. 4790)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

**PROSKAUER ROSE LLP**
Mark K. Thomas (*pro hac vice* pending)
Paul V. Possinger (*pro hac vice* pending)
Jeremy T. Stillings (*pro hac vice* pending)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602-4342
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

– and –

**PROSKAUER ROSE LLP**
Richard J. Corbi (*pro hac vice* pending)
1585 Broadway
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Proposed Co-Counsel for the Debtors and Debtors in Possession*