# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| TLC Vision (USA) Corporation, *et al.*,[1] ) | Case No. 09-14473 (KG) |
| ) | Joint Administration Requested |
| Debtors. ) | |
| ) | Hearing Date: To Be Determined |
| ) | Objection Deadline: To Be Determined |

## APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING THE RETENTION OF MORRIS ANDERSON & ASSOCIATES, LTD. AS RESTRUCTURING MONITOR FOR THE DEBTORS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby apply to the Court (this "Application") pursuant to 11 U.S.C. §§ 105(a) and 327 for entry of an order (the "Order"), in substantially the form attached hereto as **Exhibit A**, authorizing the retention of Morris Anderson & Associates, Ltd. ("MAA") as restructuring monitor of the Debtors. In support of the Application, the Debtors rely on the *Declaration of Robert F. Troisio* (the "Troisio Declaration"), a copy of which is attached hereto as **Exhibit B**, and respectfully state as follows:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in the cases, along with the last four digits of each Debtor's federal tax identification number and address, are: TLC Vision (USA) Corporation (6220) 16305 Swingley Ridge Road, Chesterfield, MO 63017; TLC Vision Corporation (1150) 5280 Solar Drive, Suite 300, Mississauga, Ontario, L4W 5M8; and TLC Management Services, Inc. (0374) 1209 Orange Street, Wilmington, DE 19801.

4. The statutory bases for the relief requested herein are sections 105(a) and 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Application, no official committees have been appointed or designated.

6. The factual background relating to the Debtors' commencement of these Chapter 11 cases is set forth in detail in the *Declaration of Michael F. Gries, Chief Restructuring Officer for the Debtors, in Support of First Day Pleadings* (the "Gries Declaration") filed on the Petition Date and incorporated herein by reference.

## Relief Requested

7. Pursuant to sections 105(a) and 327(a) of the Bankruptcy Code, the Debtors request entry of an order authorizing the retention of MAA and Robert F. Troisio, effective as of the Petition Date, as the Debtors' restructuring monitor as required by and pursuant to the proposed Senior Secured Super Priority Debtor in Possession Credit Agreement (the "DIP Credit Agreement") and related documents. The Debtors further request authority to compensate the Plan Monitor in accordance with the fee structure described below and pursuant to the terms and

- 2 -

conditions of the engagement letter between MAA and the Debtors, dated October 21, 2009.[2] A copy of the Engagement Letter (the "Engagement Letter") is attached as **Exhibit 1** to the Order. The Debtors selected MAA and Mr. Troisio after and interviewing other firms and considering the requirements for the debtor in possession credit facility.

### Qualifications Of The Restructuring Monitor And Robert F. Troisio

8. As a condition precedent to (a) providing the debtor in possession credit facility pursuant to the DIP Credit Agreement and related documents, and (b) providing their support for the restructuring and plan of reorganization as described in further detail in the Gries Declaration (the "Restructuring"), the Debtors are required to retain MAA and Mr. Troisio to provide the services described below.

9. Each of MAA and Mr. Troisio has extensive experience in providing restructuring and financial advisory services in reorganization proceedings, and has an excellent reputation for the services each of them has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. Mr. Troisio, who will lead this engagement, has 28 years of experience advising corporate and debtor clients. MAA specializes in, among other things, corporate restructuring, crisis management, and mergers/acquisitions in Chapter 11 Cases.

10. The Debtors selected MAA based on its longstanding reputation in assisting companies through complex financial restructurings, including bankruptcy reorganizations, and its degree of success in a wide range of industries. As such, the Debtors believe that MAA is well-qualified and able to serve on behalf of the Debtors in a cost-effective, efficient, and timely manner. Based on the foregoing, the senior secured lenders have made the engagement of MAA a condition to the debtor in possession financing that the Debtors require.

---

[2] In the event of any inconsistencies between the description of the engagement described in this Application and the terms of the Engagement Letter, the Engagement Letter shall control.

- 3 -

## Scope Of Services

11.     MAA will work collaboratively with the senior management team of the Debtors and its subsidiaries and their professionals to implement the Restructuring. The role of MAA will be limited to working with the Company's senior management and professionals to do the following:

- Assisting the Debtors and their professionals in the reorganization process, to help coordinate their efforts with their various stakeholders and assist the Debtors and their professionals in implementing the Restructuring.

- Participate in communications and/or negotiations with the Debtors' stakeholders and their respective advisors in order to efficiently complete the Restructuring, subject to the direction and control of the Debtors' Board of Directors.

- Assist with the implementation of the transactions contemplated by the Restructuring, subject to the direction and control of the Debtors' Board of Directors.

- Provide periodic reports and responses to inquiries with respect to status, issues and action items related to the Restructuring to the Debtors' Board of Directors, the steering committee for the Debtors' prepetition secured lenders, and their respective advisors.

- Upon the reasonable request of the Lenders or the prepetition secured lenders, attend and arrange meetings among the senior management of the Debtors, one or more of the representatives of the Debtors' Board of Directors, the lenders, and their respective advisers, to facilitate the implementation of the Restructuring.

- Provide services regarding such other matters contemplated by the Restructuring as may be requested by the Debtors that fall within MAA's expertise and that are mutually agreeable to the Debtors and MAA.

12.     To address and handle the above responsibilities on behalf of the Debtors, Mr. Troisio may be assisted by certain professionals from MAA pursuant to the terms of the Engagement Agreement.

1113/74009-001 Current/16949930v1
RLF1 3518758v.1

13. Mr. Troisio and MAA will take care not to duplicate any of the tasks or efforts of the Debtors' other advisors or professionals, including Conway Del Genio, Gries & Co. or Michael F. Gries (as the Debtors' chief restructuring officer).

### The Restructuring Monitor's Disinterestedness

14. To the best of the Debtors' knowledge, information and belief, and as disclosed in the Troisio Declaration and exhibits thereto, neither MAA, Mr. Troisio, nor any professional employee or independent contractor of MAA has any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as set forth in the Troisio Declaration.

15. In addition, as set forth in the Troisio Declaration, if any new material facts or relationships are discovered or arise, MAA will provide the Court with a supplemental declaration.

### Compensation

16. As set forth in the Engagement Letter, MAA will bill the Debtors for its services at the rate of $50,000 per month, plus out-of-pocket expenses incurred in connection with these cases including, but not limited to, travel, lodging, meals, postage, long-distance telephone, facsimile charges, rental cars, photocopying, as well as other attendant costs that MAA may reasonably incur in connection with these Chapter 11 cases. Also, although MAA is not entitled to any indemnification from the Debtors pursuant to the Engagement Letter, MAA's liability for actions taken pursuant to the Engagement Letter is limited to actions by MAA that constitute willful or wanton misconduct or gross negligence.

17. The Debtors shall pay to MAA the compensation set forth above pursuant to the requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable orders of this Court. The Debtors propose that MAA's compensation shall be subject only to the standard of review

set forth in section 328(a) of the Bankruptcy Code and not subject to any other standard of review, including the standard of review under section 330 of the Bankruptcy Code.

18. The fee structure provided for in the Engagement Letter is consistent with and typical of arrangements entered into by MAA and other comparable firms in connection with the rendering of similar services under similar circumstances.

19. Given the numerous issues that MAA may be required to address in the performance of its services, its commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee structure as set forth in the Engagement Letter is reasonable under the standards set forth in section 328 of the Bankruptcy Code.

## Legal Basis For Relief

20. The Debtors seek approval of the Engagement Letter and the fee structure set forth therein pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis ...." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including restructuring advisors and financial advisors, on more flexible terms that reflect the nature of their services and market conditions, which is a significant departure from prior bankruptcy practice relating to the compensation of professionals. As the United States Court of Appeals for the Fifth Circuit recognized in *In re National Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted). Owing to this inherent uncertainty, courts in this circuit and other jurisdictions have approved similar arrangements that contain reasonable terms and conditions under section 328. *See Artists Theatre Co. v. Walton*, 315 F.3d 217, 228-234 (3d Cir. 2003) (applying "market driven" approach and holding retention application of financial advisor, including indemnification provisions, was reasonable); *In re Insilco Techs., Inc.*, 291 B.R. 628, 633 (Bankr. D. Del. 2003) ("Section 328 authorizes the employment of professional persons on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis or on a contingent fee basis. Section 328 applies to all professionals, including financial advisors, that a debtor seeks to retain ... [T]he Court is guided by a standard of reasonableness when analyzing the terms and conditions of engagement of professionals, including retainers held by professionals."); *see also In re Tribune Co.*, Case No. 08-13141 (KJC); *In re Washington Mut., Inc.*, Case No. 08-12229 (MFW); *In re PPI Holdings, Inc.*, Case No. 08-13289 (KG); *In re Smart World Technologies, LLC*, 552 F.3d 228 (2d. Cir. 2009).

21. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly

- 7 -

basis, <u>on a fixed or percentage fee basis,</u> or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added).

This change makes clear that debtors are able to retain a professional on a fixed fee basis with court approval.

22. The Debtors submit that the proposed fee structure appropriately reflects the nature and scope of services to be provided by MAA and is appropriate in light of MAA's substantial experience with respect to restructuring and financial advisory services and the fee structures typically utilized by MAA and other leading restructuring advisors and financial advisors.

## Notice

23. Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the Steering Committee of Lenders; (d) counsel to the Steering Committee of Lenders; (e) the Securities and Exchange Commission; (f) the Internal Revenue Service; (g) the Office of the United States Attorney for District of Delaware; (h) the agent to the proposed debtor-in-possession lender; and (i) Harris Bank, as the Debtors' primary bank deposit. In light of the nature of the relief requested, the Debtors submit that no further notice is required. As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

WHEREFORE the Debtors respectfully request the entry of an order in substantially the form attached hereto as **Exhibit A**: (a) authorizing and approving the retention and employment by the Debtors of Morris Anderson & Associates, Ltd. as Restructuring Monitor of the Debtors, effective as of the Petition Date; and (b) granting such other and further relief as the Court deems just and proper

Dated:  December 21, 2009
Wilmington, Delaware

**TLC VISION (USA) CORPORATION,
TLC VISION CORPORATION
TLC MANAGEMENT SERVICES, INC.**

By: _____
James Tiffany, President

- 9 -