## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TLC Vision (USA) Corporation, *et al.,*[1] | ) | Case No. 09-14473 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Hearing Date: February 17, 2010 at 10:00 a.m.** |
| | ) | **Objection Deadline: February 10, 2010 at 4:00 p.m.** |

## MOTION FOR ENTRY OF ORDER APPROVING: (I) THE DISCLOSURE STATEMENT; (II) PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN; AND (III) RELATED NOTICE AND OBJECTION PROCEDURES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move this Court for entry of an order approving: (1) the Disclosure Statement With Respect to the Joint Chapter 11 Plan of Reorganization Dated as of January 6, 2010 [Docket No. 95] (as may be amended, the "Disclosure Statement"[2]); (2) procedures for the solicitation and tabulation of votes to accept or reject the Debtors' Joint Chapter 11 Plan of Reorganization dated as of January 6, 2010 [Docket No. 94] (as may be amended, the "Plan"); and (3) related notice and objection procedures (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number and address, are: TLC Vision (USA) Corporation (6220), 16305 Swingley Ridge Road, Chesterfield, MO 63017; TLC Vision Corporation (1150), 5280 Solar Drive, Suite 300, Mississauga, Ontario, L4W 5M8; and TLC Management Services, Inc. (0374), 1209 Orange Street, Wilmington, DE 19801.

[2] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Disclosure Statement.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and rule-based predicates for the relief requested herein are sections 1125, 1126 and 1128 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code"), rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Preliminary Statement

4. On December 22, 2009, this Court entered an order approving debtor-in-possession financing, authorizing the use of cash collateral, and granting related relief [Docket No. 40] (the "Interim DIP Order") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Interim DIP Order approved on an interim basis the DIP Credit Agreement (as defined in the Interim DIP Order) and required the Debtors to comply with the terms thereof. (*See* Interim DIP Order at ¶¶ 3, 5 and 23.) The DIP Credit Agreement, among other things, requires that the Debtors: (a) obtain an order approving the Disclosure Statement no later than February 19, 2010; (b) obtain entry of an order confirming the Plan no later than April 20, 2010; and (c) cause the Plan to become effective no later than May 20, 2010. The Debtors filed the Motion in order to establish a procedure that will allow them to satisfy these and other requirements of the Interim DIP Order (which requirements likely also will be conditions to any debtor-in-possession financing authorized pursuant to final order of the Court), to confirm the Plan, and to exit bankruptcy in an expeditious manner.

5. On January 6, 2010, as required by the Interim DIP Order, the Debtors filed the Disclosure Statement with a copy of the Plan attached thereto as Appendix A. The Plan provides

7653/74009-001 Current/15923797v9
RLF1 3523498v.3

for a comprehensive restructuring of the Debtors' financial obligations in accordance with both (a) that certain Plan Support Agreement (the "Plan Support Agreement") by and between the Debtors and the Consenting Lenders (as such term is defined in the Plan Support Agreement) dated as of December 20, 2009 and (b) that certain Plan Term Sheet for a Proposed Chapter 11 Plan of Reorganization and Canadian Proceeding (the "Term Sheet").

6. For the convenience of the Court and parties in interest, a summary of the timeline identifying each of the relevant dates and deadlines proposed in the Motion (or previously established by the Court) is set forth immediately below:

| | |
|---|---|
| **January 15, 2010** | Deadline to Serve Notice of Disclosure Statement Hearing |
| **February 10, 2010 at 4:00 pm. Eastern** | Deadline to Object to Disclosure Statement |
| **February 17, 2010** | Voting Record Date |
| **February 17, 2010 at 1:00 pm. Eastern** | Disclosure Statement Hearing |
| **February 24, 2010** | Deadline to Serve Solicitation Packages |
| **March 10, 2010** | Deadline to Publish Confirmation Hearing Notice |
| **March 10, 2010** | Deadline to File Rule 3018 Motions |
| **March 26, 2010 at 5:00 p.m. Eastern** | Deadline to Vote on Plan |
| **March 26, 2010 at 4:00 p.m. Eastern** | Deadline to Object to Plan |
| **April 2, 2010** | Deadline to File Ballot Report and Plan Supplement |
| **April 9, 2010** | Deadline for Debtors to File Response to Plan Objections |
| **April 16, 2010 at 10:00 am. Eastern** | Confirmation Hearing |

7653/74009-001 Current/15923797v9
RLF1 3523498v.3

7. The Debtors believe that this proposed timeline is appropriate under the circumstances. It will provide Creditors and parties in interest with sufficient notice and adequate time to review the Plan and the Disclosure Statement and determine whether and how to vote to accept or reject the Plan. It will satisfy the conditions of the Interim DIP Order and allow the Debtors continued access to the funding and use of cash collateral essential to the continued operations of the Debtors. In addition, it will allow the Debtors to resolve the Chapter 11 Cases expeditiously, thereby minimizing restructuring costs and maximizing value for the benefit of all creditor constituencies.

## Background

8. On December 21, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made.

9. The factual background relating to the commencement of the Chapter 11 Cases is set forth in detail in the Declaration of Michael F. Gries, Chief Restructuring Officer for the Debtors, in Support of First Day Pleadings [Docket No. 11] (the "Gries Declaration"), which was filed on the Petition Date and is incorporated herein by reference.

10. On January 6, 2010, the Debtors filed the Plan and Disclosure Statement.

7653/74009-001 Current/15923797v9
RLF1 3523498v.3

## Relief Requested

11.     Pursuant to sections 105, 502, 1125, 1126 and 1128 of the Bankruptcy Code and rules 2002, 3017, 3018 and 3020 of the Bankruptcy Rules, the Debtors seek the entry of an order (the "Approval Order") approving:    (a) the Disclosure Statement; (b) procedures for the solicitation and tabulation of votes to accept or reject the Plan; and (c) related notice and objection procedures.

## Argument

### I.     The Disclosure Statement Contains Adequate Information and Should Be Approved.

12.     The Debtors request that the Disclosure Statement be approved as providing "adequate information" within the meaning of section 1125 of the Bankruptcy Code.    Under section 1125 of the Bankruptcy Code, a debtor must provide its creditors and interest holders with "adequate information" regarding the debtor's proposed plan of reorganization:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan .... [I]n determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information ....

11 U.S.C. § 1125(a)(1).    Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders entitled to vote on the debtor's plan of reorganization.  *See Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 29 (S.D.N.Y. 1995); *In re Amfesco Indus., Inc.*, No. CV

5

88-2952 (JBW), 1988 WL 141524, at *5 (E.D.N.Y. Dec. 21, 1988) (stating that "[u]nder section 1125 of the Bankruptcy Code, a reasonable and typical creditor or equity security holder must be provided 'adequate information' to make an informed judgment regarding a proposed plan."); *BSL Operating Corp. v. 125 E. Taverns, Inc. (In re BSL Operating Corp.)*, 57 B.R. 945, 950 (Bankr. S.D.N.Y. 1986) (stating that "[s]ection 1125 might be described as a non-rigid 'how to inform' section .... A disclosure statement ... is evaluated only in terms of whether it provides sufficient information to permit enlightened voting by holders of claims or interests."); *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (the adequacy of a disclosure statement is to be "determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties.").

13.     The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision whether to vote for the plan. *See, e.g., Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3rd Cir. 1988) (stating that section 1125 of the Bankruptcy Code "seeks to guarantee a minimum amount of information to the creditor asked for its vote"); *In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987). Congress intended that such informed judgments would be needed to both negotiate the terms of and vote on a plan of reorganization. *Century Glove*, 860 F.2d at 100.

14.     In evaluating whether a disclosure statement provides "adequate information," courts adhere to section 1125's instruction that making this determination is a flexible exercise based on the facts and circumstances of each case.  11 U.S.C. § 1125(a)(1) (stating that

"adequate information" "means information of a kind, and in sufficient detail, as far as is reasonably practicable *in light of the nature and history of the debtor and the condition of the debtor's books and records*") (emphasis added); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of New York v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 989, 95th Cong., 2nd Sess., 121 (1978) (stating that "the information required will necessarily be governed by the circumstances of the case").

15.     Courts within the Third Circuit and elsewhere acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court. *See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop.)*, 150 F.3d 503, 518 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 2019 (1999); *In re Worldcom, Inc.*, No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. Jun. 30, 2003) (stating that "[t]he determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.") (*quoting Ionosphere*, 179 B.R. at 29); *Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) (stating that "[t]he legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a): 'Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case ....'") (*quoting* H.R. Rep. No. 595, at 408-09 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6365). This grant of

7

discretion was intended to permit courts to tailor the disclosures made in connection with a plan of reorganization to facilitate the effective reorganization of debtors in a broad range of businesses and circumstances. *See* H.R. Rep. No. 595, at 408-09 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6364-65 ("In reorganization cases, there is frequently great uncertainty. Therefore, the need for flexibility is greatest.").

16.    Accordingly, the determination of the adequacy of information in a disclosure statement must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. In that regard, courts generally examine whether a disclosure statement contains, as applicable, the following types of information:

a.    the circumstances that gave rise to the filing of the bankruptcy petition;

b.    a complete description of the available assets and their value;

c.    the anticipated future of the debtor;

d.    the source of the information provided in the disclosure statement;

e.    a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

f.    the financial condition and performance of the debtor while in chapter 11;

g.    information regarding claims against the debtor's estate;

h.    a liquidation analysis identifying the estimated return that creditors would receive if the debtor's bankruptcy case were a case under chapter 7 of the Bankruptcy Code;

i.    the accounting and valuation methods used to produce the financial information in the disclosure statement;

j.    information regarding the future management of the debtor;

k.    a summary of the plan of reorganization;

l.    an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

8

m.    the collectibility of any accounts receivable;

n.    any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan of reorganization;

o.    information relevant to the risks being taken by the creditors and interest holders;

p.    the existence, likelihood and possible success of non-bankruptcy litigation;

q.    the tax consequences of the plan of reorganization; and

r.    the relationship of the debtor with its affiliates.

*See, e.g., In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

17.    The Disclosure Statement contains ample information with respect to the topics identified above, including information with respect to: (a) the terms of the Plan; (b) certain events preceding the Chapter 11 Cases; (c) the operation of the Debtors' businesses; (d) the prospects of the Reorganized Debtors following the Effective Date, including descriptions of the businesses and properties of the Reorganized Debtors; (e) descriptions of the management and employee benefit programs of the Reorganized Debtors; (f) descriptions of the securities to be issued under the Plan; (g) estimates of the Claims asserted, or to be asserted, against the Debtors' estates and the value of distributions to be received by holders of Allowed Claims; (h) the risk factors that may affect the Plan; (i) the method and timing of distributions under the Plan; (j) a liquidation analysis identifying the estimated return that Creditors would receive if the Debtors' bankruptcy cases were cases under chapter 7 of the Bankruptcy Code; (k) the federal tax consequences of the Plan; and (l) appropriate disclaimers regarding the Court's approval of information only as contained in the Disclosure Statement. Accordingly, the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

7653/74009-001 Current/15923797v9
RLF1 3523498v.3

## II.    The Solicitation Procedures Should Be Approved.

### A.    *Establishment of a Voting Record Date*

18.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

19.    Accordingly, the Debtors request that the Court establish **February 17, 2010** as the record date (the "Voting Record Date") for purposes of determining: (a) the creditors who are entitled to vote to accept or reject the Plan; and (b) in the case of nonvoting Classes, the Creditors and Interest Holders who are entitled to receive non-voting materials.

### B.    *Notices to Nonvoting Classes*

20.    Claims and Interests in Classes A1, A2, A3, B1, B2, C1, C2, C3 and C4 are designated under the Plan as Unimpaired and, therefore, Holders of such claims and interests are conclusively presumed to accept the Plan on account of such Claims and Interests. *See* 11 U.S.C. § 1126(f). Claims and Interests in Classes A7, A8, A9, B5, B6 and C6 are Impaired under the Plan and, Holders of such Claims and Interests are not receiving or retaining property on account of such Claims and Interests under the Plan; therefore, such Holders are conclusively presumed to reject the Plan on account of such Claims and Interests. *See* 11 U.S.C. § 1126(g).

21.    Bankruptcy Rule 3017(d) provides, in relevant part, as follows:

> If the court orders that the disclosure statement and the plan or a summary of the plan shall not be mailed to any unimpaired class, notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan

10

or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, shall be mailed to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation.

Fed. R. Bankr. P. 3017(d).

22.     Accordingly, the Debtors propose to send to Holders of Unimpaired Claims and Interests in Classes A1, A2, A3, B1, B2, C1, C2, C3 and C4 a notice of non-voting status, substantially in the form annexed to the proposed Approval Order as **Exhibit 1** (the "Notice of Non-Voting Status"), which informs such Holders that their Claims or Interests are Unimpaired and sets forth the manner in which a copy of the Plan and Disclosure Statement may be obtained at no charge.

23.     As noted above, Holders of Claims and Interests in Classes A7, A8, A9, B5, B6 and C6 will not receive or retain any property on account of such Claims and Interests under the Plan and, thus, are conclusively presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code on account of such Claims and Interests.  Because such Classes are deemed to have rejected the Plan, the Debtors propose to mail a Notice of Non-Voting Status to the Holders of Claims and Interests in such Classes.

24.     The Notice of Non-Voting Status explains how a copy of the Plan and Disclosure Statement may be obtained at no charge.  The Debtors submit that such notice satisfies the requirements of the Bankruptcy Code and Bankruptcy Rules.

## C.     *Approval of Solicitation Packages*

25.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to Holders of Claims and Interests entitled to vote to accept or reject a plan for the purposes of soliciting their votes to accept or reject such plan and providing adequate notice of the hearing to confirm such plan.  Specifically, Bankruptcy Rule 3017(d) provides, in relevant part, that:

11

Upon approval of a disclosure statement— except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders— the debtor in possession, trustee, proponent of the plan or clerk as the court orders, shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,

    (a)    the plan or a court-approved summary of the plan;

    (b)    the disclosure statement approved by the court;

    (c)    notice of the time within which acceptances and rejections of such plan may be filed; and

    (d)    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

26.    Contingent upon the Court's approval of the Disclosure Statement, the Debtors propose to distribute or cause to be distributed solicitation packages (the "Solicitation Packages") to all Holders of Claims in Classes A4, A5, A6, B3, B4 and C5 (the "Voting Classes"), including (a) all persons or entities identified in the Debtors' schedules of assets and liabilities filed pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 (as may be amended from time to time, the "Schedules") as holding liquidated, noncontingent and undisputed claims in an amount greater than zero dollars, excluding scheduled claims that have been paid in full or superseded by filed proofs of claim, (b) all parties having timely filed proofs of claim, as reflected in the official claims register maintained by Epiq Bankruptcy Solutions, LLC (the "Voting Agent") in amounts (i) greater than zero or (ii) that are wholly contingent, unliquidated or disputed and, as to both of the foregoing, whose claims have not been disallowed or expunged

prior to the Solicitation Date (as defined below), (c) the assignee of a transferred and assigned claim (whether a filed or scheduled claim) whose transfer and assignment has been properly noted on the Court's docket and is effective pursuant to Bankruptcy Rule 3001(e) as of the close of business on the Voting Record Date and whose claims have not been disallowed or expunged prior to the Solicitation Date, and (d) any other known holders of claims against the Debtors as of the Voting Record Date. The Debtors expect that they will be able to complete distribution of the Solicitation Packages no later than **February 24, 2010** (the "Solicitation Date").

27. Each Solicitation Package shall include copies of: (a) a cover letter describing the contents of the Solicitation Package; (b) the Approval Order (without exhibits); (c) the Confirmation Hearing Notice (as defined below); (d) an appropriate form of Ballot (as defined below) together with a pre-addressed, postage prepaid return envelope addressed to TLC Vision (USA) Corporation Claims Processing Center, c/o Epiq Bankruptcy Solutions, LLC, FDR Station, P.O. Box 5014, New York, NY 10150-5014; (e) the Disclosure Statement (together with the Plan annexed thereto as Appendix A, and all other appendices); and (f) such other materials as the Court may direct. The Debtors submit that the Solicitation Packages comply with Bankruptcy Rule 3017(d) and should be approved.[3]

### D.   *Approval of Forms of Ballots*

28. Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot that substantially conforms to Official Form No. 14 only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors propose to distribute to Creditors entitled to vote to accept or reject the Plan one or more ballots in the forms attached to the proposed Approval Order collectively as **Exhibit 2** (each a "Ballot," and collectively, the

---

[3]   All Solicitation Package materials (excluding the Ballots) will be available for review online at www.epiqbankruptcysolutions.com.

13

"Ballots"). The Ballots are based on Official Form No. 14, but have been modified to address the particular terms of the Plan. The Debtors propose that the appropriate form of Ballot will be distributed to Holders of Claims in the Classes entitled to vote to accept or reject the Plan, as follows:

| Exhibit 2A | **Class A4 Ballot** for Prepetition Lender Secured Claims against TLC USA |
| --- | --- |
| Exhibit 2B | **Class A5 Ballot** for General Unsecured Claims against TLC USA |
| Exhibit 2C | **Class A6 Ballot** for Medical Pending Litigation Claims against TLC USA |
| Exhibit 2D | **Class B3 Ballot** for Prepetition Lender Secured Claims against TLC Canada |
| Exhibit 2E | **Class B4 Ballot** for General Unsecured Claims against TLC Canada |
| Exhibit 2F | **Class C5 Ballot** for Prepetition Lender Secured Claims against TLC MSI |

29. Classes A1, A2, A3, B1, B2, C1, C2, C3 and C4 are unimpaired and, therefore, conclusively presumed to accept the Plan in accordance with section 1126(f) of the Bankruptcy Code. In addition, Holders of Interests and Claims in Classes A7, A8, A9, B5, B6 and C6 will neither receive nor retain any property under the Plan on account of such Claims and Interests. Accordingly, Classes A7, A8, A9, B5, B6 and C6 are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors do not propose any Ballots for Holders of Claims or Interests in these classes.

14

### E. *Voting Deadline*

30.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of [a] disclosure statement, the Court shall fix a time within which the holders of claims and interests may accept or reject [a] plan . . . ." Fed. R. Bankr. P. 3017(c).  The Debtors anticipate commencing the Plan solicitation period by mailing Ballots and other approved solicitation materials no later than the Solicitation Date.  Based on this schedule, the Debtors propose that, to be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered to the Voting Agent either: (a) by mail in the return envelope provided with each Ballot, (b) by overnight courier, or (c) by personal delivery so that, in each case, all Ballots are received by the Voting Agent no later than 5:00 p.m., Eastern time, on **March 26, 2010** (the "Voting Deadline").

### III.     The Tabulation Procedures Should Be Approved.

31.     Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).  Similarly, section 1126(d) of the Bankruptcy Code provides:

> A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by owners of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

15

11 U.S.C. § 1126(d). Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

**A.** ***Ballot Tabulation***

32. The Debtors propose that each Holder of a Claim within a Class of Claims entitled to vote to accept or reject the Plan be entitled to vote the amount of such Claim as set forth in the Schedules (as may be amended from time to time) unless: (a) such Holder has timely filed a proof of claim, in which event such Holder would be entitled to vote the amount of such Claim as set forth in such proof of claim; or (b) the Debtors have satisfied such Claim in accordance with orders of the Court, in which event such Holder would be entitled to vote only the amount of such Claim that has not been satisfied (if any). The foregoing general procedure will be subject to the following exceptions:

    a) If a Claim is deemed "Allowed" under the Plan or an order of the Court, such Claim is allowed for voting purposes in the deemed "Allowed" amount set forth in the Plan or the Court's order;

    b) If a Claim for which a proof of claim has been timely filed is wholly contingent, unliquidated or disputed, the Debtors propose that such Claim be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, and the Ballot mailed to the Holder of such Claim shall be marked as voting at $1.00;

    c) If a Claim is partially liquidated and partially unliquidated, the Debtors propose that the Claim be allowed for voting purposes only in the liquidated amount;

    d) If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

    e) If a Claim is listed in the Schedules as contingent, unliquidated or disputed and a proof of claim was not (A) filed by the applicable bar date for the filing of proofs of claim established by the Court or (B) deemed timely filed by an order of the Court prior to the Voting Deadline, then, unless the

7653/74009-001 Current/15923797v9
RLF1 3523498v.3

Debtors have consented in writing, the Debtors propose that such Claim be disallowed for voting purposes and for purposes of allowance and distribution pursuant to Bankruptcy Rule 3003(c);

f) If the Debtors have filed an objection to a Claim before the Voting Deadline, the Debtors propose that such Claim be disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection; and

g) Notwithstanding anything to the contrary contained herein, any Creditor who has filed or purchased duplicate Claims (whether against the same or multiple Debtors) that are classified under the Plan in the same Class, shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate claims.

33.     The Debtors believe that the foregoing proposed tabulation procedures provide for a fair and equitable voting process. If any Creditor seeks to challenge the allowance of its Claim or Interest for voting purposes in accordance with the above procedures, the Debtors request that the Court direct such Creditor to serve on counsel for the Debtors and file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Plan no later than 5:00 p.m. (Eastern time) on the fourteenth (14th) day after the later of (a) the Solicitation Date and (b) the date of service of an objection, if any, to such claim. The Debtors further propose, in accordance with Bankruptcy Rule 3018(a), that as to any Creditor filing such a motion, such Creditor's Ballot should not be counted unless temporarily allowed by the Court for voting purposes, after notice and a hearing. If and to the extent that the Debtors and such party are unable to resolve the issues raised by the Rule 3018 Motion prior to the Voting Deadline established by the Bankruptcy Court, then at the Confirmation Hearing the Bankruptcy Court will determine whether the provisional Ballot should be counted as a vote on the Plan.

34.     The Debtors request that: (a) whenever a Creditor casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last Ballot received before the Voting

17

Deadline be deemed to reflect the voter's intent and, thus, to supersede any prior Ballots; and (b) Creditors with multiple Claims within a particular Class must vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their votes, and thus neither (i) any Ballot that partially rejects and partially accepts the Plan nor (ii) any Ballot filed by a Creditor with multiple Claims within a Class who votes inconsistently will be counted.

35.     The Debtors further propose that, without further order of the Court, the following Ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected: (a) any Ballot that is properly completed, executed and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and rejection of the Plan; (b) any Ballot actually received by the Voting Agent after the Voting Deadline, unless the Debtors shall have granted in writing an extension of the Voting Deadline with respect to such Ballot; (c) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (d) any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan; (e) any Ballot cast for a Claim scheduled as unliquidated, contingent or disputed for which no proof of claim was timely filed; (f) unless expressly authorized by the Approval Order, any unsigned or non-originally signed Ballot; (g) any Ballot sent directly to any of the Debtors, their agents (other than the Voting Agent) or the Debtors' financial or legal advisors or to any party other than the Voting Agent; (h) any Ballot cast for a Claim that has been Disallowed (for voting purposes or otherwise); and (i) unless expressly authorized in the Approval Order, any Ballot transmitted to the Voting Agent by facsimile or other electronic means.

18

36.     Subject to any contrary order of the Court, the Debtors reserve the right to reject any and all Ballots the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules.

37.     None of the Debtors, the Voting Agent or any other person or entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification. Rather, the Voting Agent may disregard, with no further notice, defective ballots described above.

## IV.     The Confirmation Hearing Notice and Objection Procedures Should Be Approved.

38.     Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and that "a party in interest may object to confirmation of a plan." 11 U.S.C. § 1128.

39.     Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

Fed. R. Bankr. P. 3017(c).

40.     The Debtors request that the Court establish **April 16, 2010 at 10:00 a.m.** Eastern time as the date and time of the Confirmation Hearing.

### A.     *Notice Procedures*

41.     Bankruptcy Rule 2002(b) and (d) requires not less than twenty-eight (28) days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtors propose to provide to all Creditors and equity security Holders a copy of the notice substantially in the form annexed to the proposed Approval Order as **Exhibit**

19

**3** (the "Confirmation Hearing Notice"), setting forth: (a) the date of approval of the Disclosure Statement; (b) the Voting Record Date; (c) the Voting Deadline; (d) the time fixed for filing objections to confirmation of the Plan; and (e) the time, date and place for the Confirmation Hearing.[4]

42. Bankruptcy Rule 2002(1) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(1). In addition to mailing the Confirmation Hearing Notice, the Debtors propose to publish the Confirmation Hearing Notice (or a notice substantially similar thereto) on or before **March 10, 2010** in the national editions of *The Wall Street Journal* and the *Globe & Mail*. Additionally, the Debtors will publish the Confirmation Hearing Notice electronically on the Voting Agent's case website: www.epiqbankruptcysolutions.com. The Debtors believe that publication of the Confirmation Hearing Notice will provide sufficient notice of the approval of the Disclosure Statement, the Voting Record Date, the Voting Deadline, the time fixed for filing objections to confirmation of the Plan and the time, date and place of the Confirmation Hearing to persons who do not otherwise receive notice by mail as provided for in the Approval Order.

43. The Debtors anticipate that some notices of the hearing on the Disclosure Statement (the "Disclosure Statement Hearing Notices") may be returned by the United States Postal Service as undeliverable. The Debtors believe that it would be costly and wasteful to distribute further notices, Solicitation Packages and/or Notices of Non-Voting Status to the same addresses to which undeliverable Disclosure Statement Hearing Notices were distributed. Therefore, the Debtors seek to be excused, without any further order of the Court, from distributing further notices, Solicitation Packages and/or Notice of Non-Voting Status to those

---

[4] As to the Holders of Claims in the Voting Classes, the Confirmation Hearing Notice shall be transmitted as part of each such Holder's Solicitation Package.

20

entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities at least one Business Day prior to the Solicitation Date.

44.     The Debtors also request that the Court determine that they are not required to distribute Solicitation Packages, Ballots, copies of the Disclosure Statement or Plan or any other notices to: (a) parties to executory contracts who do not hold either allowed (for voting or otherwise) Claims or filed or scheduled claims listed as contingent, unliquidated or disputed; or (b) Holders of Claims against the Debtors that have not been classified in the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

45.     The Debtors submit that the foregoing procedures will provide adequate notice of the Confirmation Hearing and, accordingly, request that the Court approve such notice as adequate.

**B.      *Procedures for the Filing of Objections to Confirmation of the Plan***

46.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bank. P. 3020(b)(1). The Confirmation Hearing Notice provides, and the Debtors request that the Court direct that, objections to confirmation of the Plan or proposed modifications to the Plan, if any, must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court; (c) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (d) state with particularity the basis and nature of any objection to the Plan; and (e) be electronically filed, together with proof of service, with the Court and served on the parties listed in the Confirmation Hearing Notice no later than 5:00 p.m. (prevailing Eastern time) on **March 26, 2010 at 5:00 p.m. Eastern** (the "Plan Objection Deadline").

7653/74009-001 Current/15923797v9
RLF1 3523498v.3

47.     The Debtors further request leave to file a consolidated response to any Plan objection filed by no later than **April 9, 2010**.

48.     The proposed timing for filing and service of objections and proposed modifications, if any, will afford the Court, the Debtors and other parties in interest sufficient time to consider the objections and proposed modifications prior to the Confirmation Hearing.

### Notice

49.     This Motion has been served upon: (a) the Office of the United States Trustee; (b) counsel for the Prepetition Lenders; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the Debtors' debtor-in-possession lender; (e) proposed counsel to the Creditors' Committee; and (f) all parties in interest in the Chapter 11 Cases who have requested notice pursuant to Bankruptcy Rule 2002. Notice of the hearing to approve the Disclosure Statement will be served upon substantially all of the Debtors' known creditors. The Debtors submit that good and sufficient notice of this Motion and the hearing to approve the Disclosure Statement, including as required by Bankruptcy Rule 2002, has been provided and that no other or further notice need be provided.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request the Court: (1) enter the Approval Order in substantially the form attached hereto as **Exhibit A**, (a) approving the Disclosure Statement; (b) approving procedures for the solicitation and tabulation of votes to accept or reject the Plan; and (c) approving related notice and objection procedures, and (2) grant such other and further relief as is just and proper.

22

Dated: January 6, 2010
       Wilmington, Delaware

Respectfully submitted,

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Chun I. Jang (No. 4790)
Andrew C. Irgens (No. 5193)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701

- and -

**PROSKAUER ROSE LLP**
Mark K. Thomas (admitted *pro hac vice*)
Paul V. Possinger (admitted *pro hac vice*)
Jeremy T. Stillings (admitted *pro hac vice*)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602-4342
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Proposed Co-Counsel for the Debtors
and Debtors In Possession*