# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TLC Vision (USA) Corporation, et al.[1], | Case No. 09-14473 (KG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: January 22, 2010 at 11:30 a.m.**<br>**Objection Deadline: January 15, 2010 at 4:00 p.m.** |
| | Re: Docket No. 22 |

## LIMITED OBJECTION BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ORDER AUTHORIZING THE SALE OF THE DEBTORS' CANADIAN OPERATIONS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

The Official Committee of Unsecured Creditors (the "Committee") of the above-referenced debtors and debtors-in-possession (collectively, the "Debtors") hereby files this limited objection (the "Objection") to the motion (the "Motion") [Docket No. 22] by the Debtors for entry of an order (a) authorizing the sale of the Debtors' Canadian operations (the "Assets") free and clear of all liens, claims, encumbrances and other interests and (b) granting certain related relief. In support of this Objection, the Committee submits the Declaration of Edward T. Gavin, CTP (the "Gavin Declaration"). In further support of the Objection, the Committee respectfully represents as follows:

### Preliminary Statement

1. While the Bankruptcy Code allows a debtor-in-possession to sell its assets through a private sale, this authority does not grant a debtor-in-possession unfettered discretion in structuring the sale. Instead, irrespective of whether a sale is private or public, a debtor-in-possession remains obligated to maximize value for the benefit of its creditors.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number and address, are: TLC Vision (USA) Corporation (6220) 16305 Swingley Ridge Road, Chesterfield, MO 63017; TLC Vision Corporation (1150) 5280 Solar Drive, Suite 300, Mississauga, Ontario, L4W 5M8; and TLC Management Services, Inc. (0374) 1209 Orange Street, Wilmington, DE 19801.

2430540

2. The Debtors have not met their burden here. Notwithstanding the Debtors' assertions in the Motion about maximizing value, these statements are merely conclusory; the Debtors neither submitted a valuation supporting the purchase price's reasonableness nor have the Debtors shown that they conducted diligent and sufficient efforts to market the Assets prepetition.

3. The Committee does not necessarily oppose the proposed sale. Indeed, the proposed offer to purchase the Assets may be the best and highest offer for the Assets. But absent evidence that the proposed purchase price is near or exceeds the fair market value for the Assets or that the Debtors conducted a process to canvass the market and solicit offers from interested parties, it cannot be established that the proposed transaction will maximize value for creditors or is in good faith. Accordingly, a private sale cannot be authorized based on the present record.

4. Furthermore, the Committee's financial advisor has identified at least two potential alternative bidders. Based on these preliminary findings, the Committee submits that a short period to allow these, and potentially other parties, an opportunity to conduct diligence efforts – and if there is appropriate interest, to make a counter offer for the Assets – appears warranted given the present record for these cases.

## Background

5. On December 21, 2009, each of the Debtors filed for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") commencing the above-captioned bankruptcy cases (the "Cases").

6. On or about December 22, 2009, the Debtors filed the Motion seeking, among other things, authorization to sell the Assets through a private sale. Pursuant to the notice accompanying the Motion, the Debtors requested that a hearing be held on January 6, 2010, so that a determination could be made regarding the appropriateness of a private sale.

7. On January 5, 2010, the Office of the United States Trustee formed the Committee and appointed the members thereof. Shortly thereafter, the Committee retained Winston & Strawn LLP and Morris James LLP as counsel in these cases.

8. At the January 6 hearing, the Court determined that it would not enter any interim relief and that the final hearing on the Motion would be held on January 22, 2010 with all objections due on January 15, 2010 at 4:00 p.m. (Eastern time).

9. On January 8, 2010, the Committee retained NHB Advisors, Inc. (the "Financial Advisor") as its financial advisor. Immediately after being retained, the Financial Advisor contacted and spoke with several parties who might purchase some or all of the Assets. None of the parties with whom the Financial Advisor spoke with had been contacted by the Debtors about acquiring the Assets. This included a potential buyer who said it had communicated to the Debtors' management a few years ago about its interest in purchasing some or all of the Assets.

10. Furthermore, the potential purchasers whom the Financial Advisor interviewed said that they either had no idea that the Debtors intended to sell the Assets or only learned about the Assets' availability after the Debtors announced the proposed asset sale transaction with 7289499 Canada, Inc.

11. In less than a week, the Committee's Financial Advisor has located at least two parties who have expressed interest in acquiring the Assets. Since these parties have not been able to conduct any diligence thus far, they have not formulated formal bids. But they are aware of the proposed purchase price and which Assets are subject to the sale.

## Argument

I. **The Debtors Must Show a Sound Business Purpose for the Proposed Sale**

12. Section 363(b)(1) of the Bankruptcy Code permits the "trustee, after notice and a hearing . . . [to] sell . . . other than in the ordinary course of business, property of the estate . . . ." 11

3

U.S.C. § 363(b)(1). The trustee's business judgment in pursuing a sale generally is accorded great judicial deference (including whether to structure the sale privately or through an auction), but this discretion remains subject to review by the court. *See In re Bakalis*, 220 B.R. 525, 532-33 (Bankr. E.D. N.Y. 1998) ("Although a trustee's business judgment enjoys 'great judicial deference,' this discretion is not without limit.") (citation omitted); *see also Travelers Cas. & Sur. Co. v. Future Claimants Representative*, 2008 U.S. Dist. LEXIS 23496 at *11 (D.N.J. Mar. 25, 2008) (the court may consider whether the sale is conducted "with sound business reasons, accurate and reasonable notice; adequate price (fair and reasonable); and good faith").

13. Irrespective of whether a sale is conducted privately or publicly, in exercising her business judgment, a trustee is obligated to maximize value obtained from a sale. *See, e.g., In re Chung King, Inc.*, 753 F.2d 547, 549 (7th Cir. 1985) (a sale must result in the estate obtaining the best price possible under the circumstances); *In re Pyschometric Systems, Inc.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007) ("a court must always scrutinize whether the trustee has fulfilled his duty to 'maximize the value obtained from a sale. . . .'") (citing *In re Bakalis*, 220 B.R. at 532-33); *In re Embrace Systems Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court is the maximization of the value of the asset sold.") (citation omitted). To meet this burden, "a debtor must demonstrate that the proposed purchase price is the highest and best offer." *In re Embrace Systems Corp.*, 178 B.R. at 123 (citing *In re Integrated Resources, Inc.*, 135 B.R. 746, 750 (Bankr. S.D. N.Y. (1992)).

14. Here, as further described below, the proposed private sale cannot be authorized because the Debtors have failed to support the sale with evidence that they have achieved the highest and best offer possible. *See, e.g., In re Embrace Systems Corp.*, 178 B.R. at 123-24 (disapproving a private sale where the debtor did not demonstrate that it received the highest and best offer as it did

4

not show that it sufficiently marketed the asset and where that debtor's president failed to perform his fiduciary duties because he did not make adequate inquiries into the value of the property before proposing a sale); *In re Planned Systems, Inc.*, 82 B.R. 919, 923 (Bankr. S.D. Ohio 1988) (finding that a private sale was not in the best interests of the estate because the court had not been presented with evidence of the value of the sale property); *see generally In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3d Cir. 1986) ("Generally speaking, an auction may be sufficient to establish that one has paid 'value' for the assets of a bankruptcy.").

### A. The Debtors Have Not Adequately Marketed the Assets

15. When marketing efforts have adequately exposed assets to the marketplace, courts have held that the price paid through a private sale maximized value for creditors' benefit. For example, in *In re Blue Coal Corp.*, 67 B.R. 798 (Bankr. M.D. Pa. 1986), the court approved a private sale of assets because, among other things, the trustee: (i) placed advertisements regarding the assets in major relevant trade journals; (ii) sent notice to approximately 60 companies in the industry regarding the availability of the assets; and (iii) offered a third party vendor a commission if it were able to obtain a buyer, which resulted in the third party further marketing the assets. 67 B.R. at 803. As these efforts culminated in the availability of Blue Coal Corp.'s assets becoming "common knowledge in the coal industry," the court found that the debtors could proceed with a private sale. *Id.*; *see also In re Planned Systems, Inc.*, 82 B.R. 919, 923 (Bankr. S.D. Ohio 1988) (stating that marketing efforts in connection with a private sale arguably were sufficient to expose the property to the marketplace when the debtor had retained a real estate broker for several months).

16. By contrast, here the Debtors have not established that they performed an industry-wide solicitation before entering into the proposed sale transaction. Instead, in the Motion, the Debtors simply maintain that TLC Vision Corporation ("TLC Vision") "received an expression of interest from the Purchasers" and thereafter received interest from two other potential purchases of

5

the businesses. (*See* Motion at ¶ 7). The Debtors do not describe extensive advertising performed or potential buyers contacted, nor do they allege that they hired a third party such as an investment banker to assist with a sale.

17. In fact, the Committee's own recent efforts to market the Assets reflect how incomplete the Debtors' prepetition marketing efforts were. Within days of entering the cases, the Financial Advisor contacted 19 financial and strategic buyers, including middle market Canadian private equity funds, middle market US private equity funds with health care services and Canadian investment interests, and potential "one-off" and "two-off buyers," and spoke with several. (*See* Gavin Declaration at ¶ 4). Through these efforts, the Financial Advisor located at least two parties who have expressed interest in making a bid on the Assets and is waiting to hear back from several more regarding their level of interest. *See id.* at ¶ 4-5. Significantly, the parties with whom the Financial Advisor has spoken either were not aware of the sale of the Assets or heard about the sale only after the announcement of the proposed transaction with 7289499 Canada, Inc. *See id.* None of these parties, including one who a few years ago expressed interest in buying the Assets, stated that they had been contacted by the Debtors about the sale. *See id.*

18. Given that the Financial Advisor was able to generate further interest in the Assets in this short period through contacting only a modest number of potential buyers, it is evident that the Debtors have not sufficiently marketed the Assets. *See id.* Without adequate marketing, the Court cannot authorize the private sale. *See, e.g., In re Pyschometric*, 367 B.R. at 674 (rejecting proposed compromise and private sale of assets because the trustee did not market the assets and did not pursue a potentially better offer); *In re Embrace Systems Corp.*, 178 B.R. at 123 (finding that debtor did not meet its burden for authorization of a private sale because "[t]here has been no showing that the marketing of the assets has been diligent or sufficient.").

19. The estates will benefit from a more competitive and complete bidding process provided through a public auction; it is the duty of the Debtors to pursue an auction in light of their inadequate prepetition marketing.

### B. The Debtors Have Not Established that the Purchase Price Provides Adequate Value

20. The Debtors have further failed to show that a private sale is a product of the Debtors' sound business judgment, because the Debtors have not shown that the purchase price reflects a fair value for the Assets. *See, e.g., In re Planned System*, 82 B.R. at 923 (converting a private sale to a public sale because the court was not presented with evidence that the value of the property was in the range established by the respective offers); *In re Ancor Exploration Co.*, 30 B.R. 802, 808 (N.D. Okl. 1983) (questioning the propriety of a private sale when the "record is unclear concerning the value being paid by the purchaser in return for the value received."). In lieu of any valuation analysis, the Debtors have stated only that they "believe a higher and better bid will not be obtained by an auction" and other assertions to similar effect. (Motion at ¶ 33).

21. Such unsubstantiated representations, however, may lead to the estates failing to maximize recovery. The Committee entered the cases on January 5, 2010 and hired its Financial Advisor on January 8, 2010. In this short period, the Financial Advisor has conducted a cursory analysis based upon information provided by the Debtors thus far and determined that under a discounted cash flow analysis, the value of the Assets is, at a minimum, the value proposed by the buyer and may in fact be greater than the purchase price. (*See* Gavin Declaration at ¶ 6).

22. While the Debtors state that they will provide evidence of the appropriateness of the purchase price at any hearing on the sale motion (Motion at ¶ 15), this effectively puts the cart before the horse. If the relief sought in the Motion is granted, the Committee and other stakeholders will be locked into a purchase price that is the product of a private and closed process with little, if

2430540

any, marketing. The Committee thus will be bound by a price without knowing if value is being maximized. The Debtors' unsubstantiated and untested representations are insufficient to bind creditors in this manner.

## II. The Court Has the Authority to Authorize Competitive Bidding

23. Finally, it is significant that as stated above, notwithstanding the Committee and the Financial Advisor's short involvement in the cases, the Financial Advisor has located additional potential buyers for the Assets. These potential buyers have not finalized their position on the Assets, as they have not yet received access to diligence materials, but their mere existence demonstrates that the Debtors' prepetition efforts were not calculated to maximize value.

24. To correct these deficiencies, the Court should ensure the maximization of value by fostering competitive bidding. *See, e.g., In re Broadmoor Place Investments, L.P.*, 994 F.2d 744, 746 (10th Cir. 1988) ("'In order to achieve the goals of maximizing the value of the estate and protecting the interests of creditors, the court has plenary powers to provide for competitive bidding.'") (citation omitted); *In re Mickey Thompson Entertainment Group, Inc.*, 292 B.R. 415, 421 (9th Cir. BAP 2003) (rejecting settlement agreement which included disposition of estate asset as not in the best interests of the estate because trustee did not follow his own overbid procedures, which would have encouraged competitive bidding); *see generally In re Planned System*, 82 B.R. at 923 (bankruptcy courts generally favor public sales of property of the estate as opposed to private sales). Under these circumstances, a private sale will merely complete a closed, flawed sale process. It therefore should be rejected.

2430540

## Conclusion

WHEREFORE, for the reasons stated above, the Committee respectfully requests that this Court deny the relief requested in the Motion, in accordance with this Objection, and direct the Debtors to conduct a process that allows other potential purchasers an opportunity to evaluate the Assets and make a competing offer for the Assets.

Dated: January 15, 2010

**MORRIS JAMES LLP**

_/s/ Stephen M. Miller_
Stephen M. Miller (DE Bar No. 2610)
Jeffrey R. Waxman (DE Bar No. 4159)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: smiller@morrisjames.com
E-mail: jwaxman@morrisjames.com

-and-

**WINSTON & STRAWN LLP**

David Neier
Rolf S. Woolner
Keith McDaniels
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700
Fax: (212) 294-4700
E-mail: dneier@winston.com
E-mail: rwoolner@winston.com
E-mail: kmcdaniels@winston.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*