# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TLC Vision (USA) Corporation, et al.[1],<br><br>Debtors. | Chapter 11<br><br>Case No. 09-14473 (KG)<br><br>(Jointly Administered)<br><br>Hearing Date: January 22, 2010 at 11:30 a.m.<br>Objection Deadline: January 15, 2010 at 4:00 p.m.<br><br>Related Docket No. 22 |

## DECLARATION OF EDWARD T. GAVIN, CTP, IN SUPPORT OF THE LIMITED OBJECTION BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ORDER AUTHORIZING THE SALE OF THE DEBTORS' CANADIAN OPERATIONS FREE AND CLEAR OF ALL LIENS, CLAIMS ENCUMBRANCES AND OTHER INTERESTS

I, Edward T. Gavin, CTP, declare as follows:

1. I am a Principal and Shareholder of NHB Advisors, Inc. ("NHB") and the leader of NHB's Creditors' Services Group. I have been affiliated with NHB since 2000. NHB was very recently appointed as financial advisor in these chapter 11 cases to the Official Committee of Unsecured Creditors (the "Committee"), and I am one of the firm professionals responsible for that engagement.

2. I make this declaration in support of the *Limited Objection by Official Committee of Unsecured Creditors to Debtors' Motion for Order Authorizing the Sale of the Debtors' Canadian Operations Free and Clear of All Liens, Claims, Encumbrances and Other Interests* (the "Objection"). Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Objection.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number and address, are: TLC Vision (USA) Corporation (6220) 16305 Swingley Ridge Road, Chesterfield, MO 63017; TLC Vision Corporation (1150) 5280 Solar Drive, Suite 300, Mississauga, Ontario, L4W 5M8; and TLC Management Services, Inc. (0374) 1209 Orange Street, Wilmington, DE 19801.

3. The matters set forth in this declaration are based upon my personal knowledge; analysis and marketing activities (which remain ongoing) conducted by me or others at NHB at my direction and under my supervision; and my professional judgment. If called upon to testify, I could and would testify competently to the matters set forth herein.

4. Immediately upon entering the cases, NHB contacted and spoke with several potential buyers of the Assets. The potential buyers contacted include eight (8) middle market Canadian private equity funds, six (6) middle market US private equity funds with health care services and Canadian investment interests and five (5) "one-off" or "two-off" buyers, described generally as parties who would not be expected to have an interest in purchasing all of the operating entities for sale as contemplated in the Debtor's motion, but may reasonably have an interest in acquiring one or more of those entities. None of the parties with whom NHB discussed the sale previously had been contacted by the Debtors regarding the Assets. This includes a potential buyer who represented to NHB that, a few years ago, this party had communicated to Debtors' management its interest in purchasing all or some of the Assets. In addition, the potential buyers we spoke with either were unaware of the availability of the Assets or only became aware of their availability after the Debtors announced the proposed transaction with 7289499 Canada, Inc. In light of the conversations NHB had with these potential buyers, it is my professional opinion that the Debtors did not conduct an industry-wide solicitation to generate interest in the Assets. By contrast, parties I believe to be obvious potential buyers had no knowledge of the Assets' availability.

5. As a result of NHB's marketing efforts, we were able to locate at least two parties who have expressed further interest in the Assets. Since these parties have not been able to conduct any diligence thus far, they have not formulated formal bids, but they are aware of the proposed purchase price and which Assets are subject to the sale. Furthermore, because NHB has not yet

heard from every party it contacted, the number of interested buyers generated by NHB's efforts may increase as our efforts to market the Assets continues.

6. Also upon NHB's entry into the cases, I and other NHB professionals began requesting information on the Assets from the Debtors so that NHB could formulate a valuation opinion. Based upon NHB's cursory analysis performed thus far with the documents and data provided by the Debtors, NHB has determined that, on a discounted cash flow basis, the value of the Assets is at least the amount of the proposed purchase price and, in fact, may be higher. In the upcoming days before the hearing, NHB will continue our valuation analysis so as to enable NHB to render a more exact opinion.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed this 15th day of January, 2010, at Wilmington, Delaware.

_____
Edward T. Gavin, CTP

LA:263493.3