## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **TLC VISION (USA) CORPORATION,** *et al.*[1] | ) | **Case No. 09-14473 (KG)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | **Re: Docket Nos. 10, 200, and 242** |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) APPROVING JUNIOR SECURED SUPERPRIORITY POSTPETITION FINANCING WITH PRIORITY OVER CERTAIN SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, AND (V) MODIFYING AUTOMATIC STAY

Upon the motion [Docket No. 200] (the "DIP Motion") of TLC Vision (USA)

Corporation ("TLC"), TLC Vision Corporation (the "Parent") and TLC Management Services,

Inc. ("TLC Management") as debtors and debtors in possession (collectively, the "Debtors") in

the above-captioned chapter 11 cases (collectively, with any Successor Cases (as defined herein),

the "Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 507 of

title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2002,

4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Del

Bankr. L.R. 4001-2, seeking entry of an interim order (the "Interim Order") and final order (this

"Final Order") *inter alia*:

(i)      authorizing the Debtors to obtain an aggregate amount not to exceed $25 million

of secured, superpriority postpetition financing, junior in priority to the prepetition secured

claims and adequate protection claims and liens granted to the Prepetition Lenders, and with

---

[1] The Debtors in these cases are: of TLC Vision (USA) Corporation, TLC Vision Corporation and TLC Management Services, Inc. The Debtors corporate offices are located at 16305 Swingley Road, Suite 300, Chesterfield, MO 63017.

administrative priority (the "DIP Facility") pursuant to the terms and conditions of that certain Junior Secured Super Priority Debtor-in-Possession Credit Agreement (as it may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Credit Agreement") by and among the Debtors, the lenders party thereto from time to time (the "DIP Lenders") and Charlesbank Equity Fund VII, Limited Partnership, as collateral agent and administrative agent (in such capacity, the "DIP Agent"), for and on behalf of itself and the DIP Lenders, substantially in the form of Exhibit A attached to the DIP Motion;

      (ii)    authorizing the Debtors to execute and deliver the DIP Credit Agreement and other related loan documents (collectively, the "DIP Documents") by and among the Debtors, the DIP Agent and the DIP Lenders party thereto and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

      (iii)    authorizing the Debtors to direct certain of the direct and indirect domestic and foreign subsidiaries of the Parent (other than TLC and TLC Management), as may be designated by the DIP Lenders (the "DIP Guarantors") to execute and deliver joint and several guarantees of the obligations under the DIP Facility (the "DIP Guarantees"), including, without limitation, each of the subsidiaries listed on Schedule I to the DIP Credit Agreement and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

      (iv)    granting to the DIP Agent and the DIP Lenders allowed superpriority administrative expense claims in the Cases and any Successor Cases for the DIP Facility and all obligations owing thereunder and under the DIP Documents, including all indemnification obligations of the Debtors thereunder (collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "DIP Obligations"), subject to the priorities set forth in paragraph 8 below;

LIBNY/4891329.3
RLF1 3545997v.1

(v)     granting to the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected, valid and enforceable junior security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"), which liens shall be subject to the priorities set forth in paragraph 7 below;

(vi)     authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Documents as they become due, including, without limitation, commitment fees, exit fees, administrative and collateral agent's fees, the fees and disbursements of the DIP Agent's and DIP Lenders' attorneys, advisers, accountants, and other consultants, all to the extent provided by and in accordance with the terms of the DIP Documents;

(vii)     authorizing the Debtors' use of Cash Collateral of the Prepetition Agent and Prepetition Lenders (each as defined herein);

(viii)     providing adequate protection to the Prepetition Agent and the Prepetition Lenders for any diminution in value of their interests in the Prepetition Collateral (as defined herein), including the Cash Collateral;

(ix)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents, the Interim Order, and this Final Order; and

(x)     scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion on a final basis.

The Court having considered the DIP Motion, Declaration of Michael F. Gries, Chief Restructuring Officer for the Debtors, in Support of First Day Pleadings [Docket No. 11], the

LIBNY/4891329.3
RLF1 3545997v.1

exhibits attached thereto, the DIP Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on February 12, 2010 (the "Interim Hearing") and the final hearing held on March 9, 2010; notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Interim Hearing and Final Hearing to consider the relief requested in the DIP Motion having been held and concluded; the Interim Order having been entered on February 12, 2010; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; it appearing to the Court that granting the final relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED BY THE DEBTORS AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A. _Petition Date_: On December 21, 2009 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.

B. _Debtors in Possession_. The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

C. _Jurisdiction and Venue_. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the property affected hereby. Consideration

LIBNY/4891329.3
RLF1 3545997v.1

of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceeding on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Statutory Committee*. On January 5, 2010, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Statutory Committee").

E.    *First DIP Facility*

(i)    *The First Interim DIP Motion*. On the Petition Date, the Debtors filed that certain Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing Pursuant to 11 U.S.C. §§ 361, 362, 363(c), 363(e), 364(c), 364(d) and 364(e) and (B) Utilize Cash Collateral of Prepetition Secured Lenders, (II) Granting Adequate Protection to the Prepetition Senior Secured Lenders and (iii) Granting Related Relief [Docket No. 10] (the "First DIP Motion"), wherein the Debtors sought approval to enter into a DIP facility (the "First DIP Facility") with certain of the Prepetition Lenders.

(ii)    *The First Interim DIP Order*. On December 22, 2009, the Court entered the Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507(1) Approving Senior Secured Superpriority Postpetition Financing with Priority Over Certain Secured Indebtedness and with Administrative Superpriority, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expenses Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, and (6) Scheduling a Final Hearing [Docket No. 40] (as amended by that certain Order of the Court dated January 22, 2010 [Docket No. 178], the "First Interim DIP Order"), whereby the Court authorized the Debtors to enter into

LIBNY/4891329.3
RLF1 3545997v.1

the Existing DIP Facility with certain of the Prepetition Lenders. The Debtors closed the Existing DIP Facility on or about December 24, 2009 and have borrowed $7.5 million under that facility. The First Interim DIP Order authorized a priming DIP loan facility. The First Interim DIP Order, at paragraph 39, authorized the Debtors to enter into a new, junior DIP loan facility and continue to use the Prepetition Lenders' cash collateral under certain terms and conditions.

F.      *Interim Order*.  Following entry of the First Interim DIP Order, the Debtors validly exercised their rights under paragraph 39 thereof and filed the DIP Motion, seeking approval of the DIP Facility on an interim and final basis.  Following the Interim Hearing held before this Court on February 12, 2010, this Court entered the Interim Order, approving the DIP Facility and such other relief requested in the DIP Motion on an interim basis.

G.      *Findings Regarding the Postpetition Financing*.

(i)      *Need for Postpetition Financing and Use of Cash Collateral*.  The DIP Facility is superior to the Debtors' other alternatives, if any, including the use of Cash Collateral alone.  The Debtors' need to obtain credit pursuant to the DIP Facility and to use Cash Collateral is immediate and critical in order to enable the Debtors and the Additional Guarantors to pay off the Existing DIP Facility, continue operations and to administer and preserve the value of their estates.  The ability of the Debtors and the Additional Guarantors to maintain business relationships with their vendors, suppliers and customers, to pay their employees, to make utility deposits and to otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful reorganization.  Neither the Debtors nor the Additional

LIBNY/4891329.3
RLFI 3545997v.1

Guarantors have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and use of Cash Collateral.

(ii)    *No Credit Available on More Favorable Terms.*  The Debtors have determined in the exercise of sound business judgment and fiduciary duty to exercise their rights under paragraph 39 of the First Interim DIP Order, payoff the Existing DIP Facility, and pursue an alternative restructuring plan.  Given their financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  The Debtors have been unable to obtain sufficient unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain credit:  (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; or (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders, (i) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 7 hereof, (ii) superpriority claims with the priorities set forth in paragraph 8, and (iii) the other protections set forth in this Final Order.

(iii)    *Use of Proceeds of the DIP Facility.*  As a condition to the entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and the agreement for the use of Cash Collateral, the DIP Agent and the DIP Lenders require, and the Debtors have agreed that, proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Documents and in accordance with and to the extent set forth in the budget

LIBNY/4891329.3
RLF1 3545997v.1

(as the same may be modified from time to time with the consent of the DIP Lenders), consistent with the terms of the DIP Documents and subject to such variances as permitted by the DIP Credit Agreement (the "Budget"), solely for (a) working capital and other general corporate purposes to fund operations of the Debtors and the Additional Guarantors, (b) permitted payment of costs of administration of the Cases (including payment of all obligations under the First DIP Facility approved pursuant to the First Interim DIP Order), and (c) payment of such prepetition and postpetition expenses as have been or hereafter are consented to by the DIP Lenders, in their reasonable discretion, and are approved by the Court.

H.    *Adequate Protection*.  Wells Fargo Bank, N.A., as collateral agent and as administrative agent (in such capacity, the "Prepetition Agent") under that certain Amended and Restated Credit Agreement dated as of June 21, 2007, by and among TLC, the Parent (as guarantor), the other additional guarantors party thereto, the lenders from time to time party thereto (the "Prepetition Lenders"), and the Prepetition Agent (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Credit Agreement", and together with all other loan and security documents related to, referenced in or executed in connection with the Prepetition Credit Agreement, the "Prepetition Credit Documents"), for the benefit of itself and the Prepetition Lenders, is entitled to continue to receive adequate protection on account of its interests in the collateral granted pursuant to the Prepetition Credit Documents (the "Prepetition Collateral") pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code to the extent of any diminution in the value of its interests in the Prepetition Collateral (including Cash Collateral) resulting from the subordination to the Carve Out (as defined herein), the Debtors' use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, and to the extent of any such diminution in value, the "Diminution in Value").

LIBNY/4891329.3
RLF1 3545997v.1

Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, will receive (i) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 herein, (ii) adequate protection payments in amounts equal to all amounts accruing (or that would be accruing but for the filing of the Cases) from and after the Petition Date in accordance with the terms of the Prepetition Credit Documents including, but not limited to, interest and reasonable fees and all other amounts accruing thereunder, and (iii), subject to that certain Stipulation and Order Regarding Debtors' Emergency Motion for Status Conference Pursuant to Section 105(d) and for Related Relief, dated February 26, 2010, as may be applicable, ongoing payment of the reasonable fees, costs and expenses (solely to the extent that such fees, costs and expenses are incurred in connection with protecting the rights of the Prepetition Lenders under the Prepetition Credit Documents) of (A) the Prepetition Agent and its counsel Ropes & Gray LLP, (B) Bingham McCutchen LLP ("Bingham"), counsel to certain of the Lenders (the "Lender Group"), pursuant to an engagement letter dated as of February 10, 2009, (C) Pachulski Stang Ziehl & Jones LLP, local Delaware counsel engaged by Bingham, subject to the terms and conditions of the fee agreement dated as of February 10, 2009, as amended, between TLC and Bingham (the "Fee Agreement"), and (D) Stikeman Elliott LLP, Canadian local counsel engaged by Bingham, subject to the terms and conditions of the Fee Agreement (collectively the "Lender Group Advisors"), in the case of (A) through (D) retained to assist the Prepetition Lenders in connection with these Chapter 11 Cases.

I. *Sections 506(c) and 552(b)*. In light of (i) the DIP Agent's and DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out (as defined herein); and (ii) the agreement of the Prepetition Agent and the required lenders as defined in the

9

Prepetition Credit Agreement (the "Required Prepetition Lenders") to subordinate their liens and superpriority claims to the Carve Out and to permit the use of their Cash Collateral for payments made in accordance with the Budget and this Final Order, each of the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders are entitled, upon entry of this Final Order, to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

J.  *Good Faith of the DIP Agent and the DIP Lenders.*

(i)  *Willingness to Provide Financing.* The DIP Lenders each are willing to provide financing to the Debtors subject to:  (a) the entry of this Final Order; (b) the DIP Lenders' approval of the terms and conditions of the DIP Facility and the DIP Documents and satisfaction of all conditions precedent in the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Final Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order, or by the filing or pendency of any motion or appeal seeking to reverse, modify, vacate, amend, reargue, or reconsider this Final Order or any other order.

(ii)  *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their

LIBNY/4891329.3
RLF1 3545997v.1

fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arms' length among the Debtors, the DIP Agent and the DIP Lenders. The credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

K. *Notice*. Notice of the Final Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) counsel for the Statutory Committee; (iii) counsel to the Prepetition Agent and the Prepetition Lenders; (iv) the Lender Group Advisors; (v) counsel to other holders of record of liens on or security interests in the Debtors' assets, (vi) required governmental agencies, and (vii) counsel to the DIP Agent for itself and for the DIP Lenders. The foregoing notice complies with Bankruptcy Rule 4001(c), and no other or further notice is necessary for purposes of this Final Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. Financing Approved. The DIP Motion is granted, the Final Order Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on an final basis is authorized, subject to the terms and conditions set forth in this Final Order.

2. Objections Overruled. All objections to the Final Order Financing and to the entry of the Final Order, if any, to the extent not withdrawn or resolved are hereby overruled.

LIBNY/4891329.3
RLF1 3545997v.1

**DIP Facility Authorization**

      3.    <u>Authorization of the DIP Financing and DIP Documents</u>. The DIP Documents are hereby approved. The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents (including authorizing and causing the execution of appropriate documents by the DIP Guarantors) and to incur and to perform the DIP Obligations (to the extent any such DIP Documents have not been executed and delivered or any such DIP Obligations have not been incurred or performed pursuant to authorization of the Interim Order) in accordance with, and subject to, the terms of this Final Order and the DIP Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Final Order and the DIP Documents (to the extent any such instruments and documents have not been executed and delivered pursuant to authorization of the Interim Order). The Debtors are hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, commitment fees, exit fees, administrative and collateral agent's fees, the fees and disbursements of the DIP Agent and the DIP Lenders (including the reasonable fees and expenses of the DIP Agent's and the DIP Lenders' attorneys, advisers, accountants, and other consultants, collateral examination, monitoring and appraisal fees, financial advisory fees, indemnification obligations, and any other reimbursement of fees and expenses, all of which fees and expenses shall constitute DIP Obligations; provided, however, that such fees and expenses shall only be paid ten (10) business days after reasonably detailed invoices for such fees shall have been submitted to the Debtors, and the Debtors shall promptly provide copies of such invoices to the Statutory Committee and the Office of the

LIBNY/4891329.3
RLFI 3545997v.1

United States Trustee), all to the extent provided in the DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order, the DIP Documents, and the Intercreditor Agreement. Effective as of their execution and delivery, the DIP Documents represent valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with the terms of the DIP Documents.

4.    <u>Authorization to Borrow</u>.  Subject to the terms and conditions set forth in the DIP Documents, DIP Facility, and this Final Order, and in order to prevent immediate and irreparable harm to the Debtors' estate, the Debtors are hereby authorized to make additional draws in the amount of $1,000,000, or multiples thereof, in the form of term loans in an aggregate amount not to exceed the aggregate principal amount of $25,000,000 (including the initial amount of $10,000,000 drawn upon or after entry of the Interim Order) each on the terms and conditions set forth in the DIP Credit Agreement (the "<u>Final Order Financing</u>").

5.    <u>DIP Obligations</u>.  The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of a Case, or in any other proceedings or Cases superseding or related to any of the foregoing (each a "<u>Successor Case</u>"). Upon entry of this Final Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Agent or the DIP Lenders under the DIP Documents or this

LIBNY/4891329.3
RLF1 3545997v.1

Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Documents. The DIP Obligations shall be due and payable, without notice or demand on the earlier to occur of (a) May 20, 2010 (the "Commitment Termination Date"), (b) the effective date of the First Amended Joint Plan of Reorganization, filed or to be filed by the Debtors, as may be amended, supplemented or restated with the prior written consent of the DIP Lenders (the "Plan"), (c) the date a sale or sales of all or substantially all of the Debtors' assets is consummated under section 363 of the Bankruptcy Code, (d) the date of conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code, (e) except as expressly contemplated by that certain Plan Sponsor Agreement, by and among the Debtors and certain affiliates of the DIP Agent dated February 3, 2010, a proposal or the liquidation of any or all of substantially all of the assets of the Debtors or any of the Guarantors under the Bankruptcy Insolvency Act (Canada), (f) the dismissal of any of the Cases, and (g) approval by the Court of any other debtor-in-possession financing for the Debtors or any of their affiliates and (h) the Termination Declaration Date (as defined paragraph 24).

6.    DIP Liens and DIP Collateral.  Effective immediately upon the execution of this Final Order, pursuant to sections 361, 362, 364(c)(2) and 364(c)(3) of the Bankruptcy Code: (a) the DIP Agent is hereby granted on a final basis, for the benefit of itself and the DIP Lenders, continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (the "DIP Liens") all existing and after acquired real and personal property, and other assets of the Debtors, tangible and intangible, whether now owned by or owing to, or arising in favor of the Debtors, whether owned or consigned by or to, or leased from or to the Debtors (to the full extent of the Debtors' interest therein), and regardless of where located, including, without limitation, the following (collectively, the "DIP

LIBNY/4891329.3
RLF1 3545997v.1

Collateral"):[2] (A) all Collateral (as defined in the DIP Documents) and the proceeds thereof,[3] (B) all avoidance power claims and actions under section 549 of the Bankruptcy Code relating to any postpetition transfer of DIP Collateral and any proceeds thereof, (C) all avoidance claims or actions under chapter 5 of the Bankruptcy Code and any proceeds thereof, (D) any unencumbered assets of any Debtor, and (E) proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all tangible or intangible property resulting form the sale, exchange, collection or other disposition of any of the foregoing, or any portion thereof or interest therein.

7.    DIP Lien Priority. The DIP Liens securing the DIP Obligations shall be continuing, valid, binding, enforceable, non-avoidable and automatically perfected security interests and liens junior only to (a) the Carve Out (as defined below), (b) Permitted Liens (as defined in the DIP Credit Agreement), and (c) all prepetition liens and encumbrances of the Prepetition Lenders, and all adequate protection claims and liens granted to the Prepetition Lenders pursuant to the First Interim DIP Order. Other than as specifically set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Case. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Cases or

---

[2] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Documents. All terms not specifically defined in the DIP Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code.

[3] DIP Collateral shall include Collateral provided by non-debtors and the proceeds thereof; provided, that nothing herein shall be construed to expand the Court's jurisdiction over non-debtor Collateral.

LIBNY/4891329.3
RLF1 3545997v.1

Successor Cases. The DIP Liens shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

8. <u>DIP Superpriority Claim</u>. Upon entry of this Final Order, the DIP Agent and the DIP Lenders are hereby granted on a final basis, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claim</u>") for all DIP Obligations. The DIP Superpriority Claim shall be subordinate only to the Carve Out and Permitted Encumbrances, and otherwise the DIP Superpriority Claims shall have priority over any and all administrative expenses and unsecured claims against the Debtors or their estates in the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, and at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.

9. <u>No Obligation to Extend Credit</u>. None of the DIP Agent or DIP Lenders shall have any obligation to make any loan under the DIP Documents, unless all of the conditions precedent to the making of such loan under the applicable DIP Documents and this Final Order have been satisfied in full or waived in writing by the DIP Lenders.

10. <u>Use of DIP Facility Proceeds</u>. The Debtors shall use loans under the DIP Facility only for the purposes specifically set forth in this Final Order, the DIP Documents and in compliance with the Budget, a copy of which is attached as <u>Exhibit A</u> hereto, which sets forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly

LIBNY/4891329.3
RLF1 3545997v.1

basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Budget; provided, however, that for any week in the Budget, the amounts for each line item may vary so long as the Debtors are in compliance with the cash variance tests set forth in Section 5.04 of the DIP Credit Agreement (collectively the "Cash Variance Tests").

**Authorization to Use Cash Collateral**
**and for Adequate Protection**

11.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order and the DIP Documents (including, without limitation, paragraph 10 of this Final Order), the Debtors are authorized on a final basis to use Cash Collateral in accordance with the Budget (subject to the Cash Variance Tests) until the earlier to occur of the Termination Declaration Date (as defined below) and the Commitment Termination Date; provided, however, that during the Remedies Notice Period (as defined in paragraph 24 hereof) the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll obligations and to pay expenses critical to the preservation of the Debtors and their estates as agreed to by the DIP Lenders in their sole discretion.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Facility, the DIP Documents, the Intercreditor Agreement and in accordance with the Budget or otherwise as approved by the Court.

12.     Adequate Protection Liens.

(a)     *Adequate Protection Liens.*  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral against any Diminution in Value of such

LIBNY/4891329.3
RLF1 3545997v.1

interests, the Debtors hereby grant on a final basis to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, continuing valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "Adequate Protection Liens").

(b)     *Priority of Adequate Protection Liens.* The Adequate Protection Liens shall be junior only to: (i) the Carve Out, and (ii) Permitted Encumbrances (as defined in the First Interim DIP Order). The Adequate Protection Liens shall otherwise be senior to all other security interests, mortgages, collateral interests, liens or claims on or to any of the DIP Collateral. Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Case, or upon the dismissal of the Cases or any Successor Case. The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

13.     Adequate Protection Superpriority Claims.

(a)     *Adequate Protection Superpriority Claims.* As further adequate protection of the interests of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Agent and the Prepetition Lenders are each hereby granted on a final basis as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority

LIBNY/4891329.3
RLF1 3545997v.1

administrative expense claim in the Cases and any Successor Case (the "Adequate Protection Superpriority Claims").

(b) *Priority of Adequate Protection Superpriority Claims.* The Adequate Protection Superpriority Claims shall be junior only to the Carve Out. Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

14. **Adequate Protection Payments and Protections.** As further adequate protection, the Debtors are authorized to and shall provide adequate protection to the Prepetition Agent and the Prepetition Lenders, in the form of: (a) adequate protection payments in amounts equal to all amounts accruing (or that would be accruing but for the filing of the Cases) from and after the Petition Date in accordance with the Prepetition Credit Documents, including but not limited to interest accruing at the default rate and fees and other amounts accruing thereunder; and (b) ongoing payment of the reasonable fees, costs and expenses, including, without limitation, reasonable legal and other professionals' fees and expenses (subject to the review period set forth in Paragraph 3 of this Order), of the Prepetition Agent and the Lender Group, including the reasonable fees, costs and expenses of the Lender Group Advisors.

15. Section 507(b) Reservation. Nothing herein shall impair, limit or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Agent and/or the Prepetition Lenders pursuant to this Final Order is

19

insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Cases or any Successor Case.

**Provisions Common to DIP Financing
and Use of Cash Collateral Authorizations**

16.  Amendment of the DIP Documents. The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto in accordance with the provisions thereof without notice or a hearing if: (a) the amendment, modification, or supplement is (i) in accordance with the DIP Documents, (ii) beneficial to the Debtors, and (iii) not prejudicial in any material respect to the rights of third parties; (b) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification or supplement is provided to counsel for the Statutory Committee and the U.S. Trustee; and (c) the amendment, modification or supplement is filed with the Court; provided, however, that consent of the Statutory Committee or the U.S. Trustee, and approval of the Court is not necessary to effectuate any such amendment, modification or supplement. Any other amendments, modifications or supplements to the DIP Documents may be made on three (3) business days' notice, or such shorter notice as agreed to by the Debtors and the DIP Lenders, and are subject to approval by the Court.

17.  Budget Maintenance. The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance acceptable to and approved by the DIP Lenders in their reasonable discretion.

18.  Modification of Automatic Stay. The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent or the

20

Prepetition Agent each may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders under the DIP Documents, the DIP Facility and this Final Order; and (d) authorize the Debtors to pay, and the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders to retain and apply, payments made in accordance with the terms of this Final Order.

19.     _Perfection of DIP Liens and Adequate Protection Liens._ This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Agent is authorized to file, as it deems necessary or advisable, such financing statements, mortgages, notices and other instrument or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens and/or Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, evidence or perfect the DIP Liens and/or the Adequate Protection Liens. The Debtors are authorized to and shall execute and deliver promptly upon demand to the DIP Agent and the

LIBNY/4891329.3
RLF1 3545997v.1

Prepetition Agent all such financing statements, mortgages, title insurance policies, notices, instruments, and other documents as the DIP Agent or the Prepetition Agent may reasonably request. The DIP Agent and the Prepetition Agent may file a photocopy of this Final Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien, instrument, or similar document.

20. <u>Maintenance of DIP Collateral and Cash Management System</u>. Until the indefeasible payment in full in cash of all DIP Obligations, and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors are authorized and directed to: (a) insure the DIP Collateral as required under the DIP Documents; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court which has first been agreed to by the DIP Lenders, or as otherwise agreed to by the DIP Lenders, in their reasonable discretion, or as otherwise required by the DIP Documents.

21. <u>Disposition of DIP Collateral; Rights of DIP Agent and DIP Lenders</u>. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral outside the ordinary course of business without the prior written consent of the DIP Lenders and the proceeds of any such sale, transfer, lease, encumbrance or other disposition shall be turned over to the DIP Agent to satisfy any outstanding DIP Obligations in accordance with the terms of the DIP Credit Agreement.

22. <u>Postpetition Financing Termination</u>. On the earlier to occur of Commitment Termination Date and the Termination Declaration Date, (a) all DIP Obligations shall be immediately due and payable, (b) all commitments to extend credit under the DIP Facility will

LIBNY/4891329.3
RLF1 3545997v.1

terminate, and (c) all authority to use Cash Collateral shall cease, provided, however, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein.

23. Events of Default. The occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein, including, but not limited to, the failure to comply with any of the terms of this Final Order, shall constitute an event of default (an "Event of Default") under this Final Order, unless waived in writing by the Required Lenders as defined in the DIP Credit Agreement (the "Required DIP Lenders").

24. Rights and Remedies Upon Event of Default. Immediately upon the occurrence and during the continuation of an Event of Default, (a) the DIP Agent, in accordance with the terms of the DIP Credit Agreement, shall be entitled to declare (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, and/or (iii) the termination of the DIP Credit Agreement and any other DIP Document as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (b) the DIP Agent (at the request of or with the consent of the Required DIP Lenders) may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral, except as provided in paragraph 11 hereof during the Remedies Notice Period defined below (any such declaration shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by email, facsimile (or other electronic means) to counsel to the Debtors, counsel to the Prepetition Agent, the Lender Group Advisors, counsel to the Statutory Committee, and the U.S.

LIBNY/4891329.3
RLF1 3545997v.1

Trustee[4] (the earliest date any such Termination Declaration is received by counsel to the Debtors prior to 5:00 p.m. prevailing eastern time shall be referred to herein as the "Termination Declaration Date"). The DIP Obligations shall be due and payable, without notice or demand, and the ability of the Debtors to use Cash Collateral shall automatically terminate or be reduced or restricted on the Termination Declaration Date, as provided in the applicable Termination Declaration except as provided in paragraph 11 during the Remedies Notice Period. For the period that is four (4) business days after the Termination Declaration Date (the "Remedies Notice Period"), the Debtors and the Statutory Committee shall be entitled to seek an emergency hearing with the Court. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred or enters an order precluding the exercise of remedies, and subject to the prior rights, remedies, claims and liens of the Prepetition Agent, the Prepetition Lenders and any rights of holders of Permitted Encumbrances, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Agent and DIP Lenders shall be permitted to exercise all remedies set forth in the DIP Credit Agreement, the DIP Documents, and the Intercreditor Agreement, as applicable, and as otherwise available at law or in equity against the DIP Collateral, as the case may be, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interests in the DIP Collateral or any other rights and remedies granted to the DIP Agent and the DIP Lenders with respect thereto pursuant to the DIP Credit Agreement, DIP Documents, this Final Order or applicable law.

---

[4] Notice shall also be provided hereunder to AMO Sales & Service, Inc., or its affiliates (as applicable) ("AMO") to the extent that any remedies are sought to be exercised by the DIP Agent against property subject to Permitted Encumbrances held by AMO.

LIBNY/4891329.3
RLF1 3545997v.1

25.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order. The DIP Agent and DIP Lenders each have acted in good faith in connection with this Final Order and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent and the DIP Lenders are each entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or created hereby. Any liens or claims granted to the DIP Agent or DIP Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

26.     [Reserved].

27.     Rights of Access and Information. Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Documents, the Debtors are authorized to afford representatives, agents and/or employees of the DIP Agent and DIP Lenders reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents, and are authorized to reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.

28.     Carve Out.

LIBNY/4891329.3
RLF1 3545997v.1

(a)    *Carve Out.*  As used in this Final Order, the "Carve Out" means the following expenses: (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (ii) all fees and disbursements payable to the information officer in connection with Canadian Case as determined by order of the Canadian Court (as such terms are defined in the DIP Agreement); and (iii) subject to the terms and conditions of this Final Order, all professional fees and disbursements incurred by (x) legal counsel for the Parent in the Canadian Case, and (y) the Debtors and the Statutory Committee for any attorneys and a single financial advisor, for the Debtors and the Statutory Committee, respectively, retained by final order of the Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated) pursuant to sections 327 or 1103(a) of the Bankruptcy Code (the "Case Professionals") to the extent allowed or later allowed by order of the Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated) under sections 328, 330 and/or 331 of the Bankruptcy Code and any interim compensation procedures order (the "Allowed Professional Fees"), but solely to the extent such Allowed Professional Fees are within the corresponding amounts set forth in the Budget and were reflected as estimated fees and expenses of Case Professionals in the most recent Budget delivered by the Debtors to the DIP Agent prior to the date that the fees were incurred; provided, however, that, following the acceleration of the DIP Facility, the amount of the Carve Out shall not exceed $250,000, plus the amount of any compensation or reimbursement of budgeted expenses and fees (including U.S. Trustee fees) incurred or awarded prior to the acceleration of the DIP Facility.

(b)    *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.*  The DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any

LIBNY/4891329.3
RLF1 3545997v.1

Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed (i) to obligate the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders, in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out if actual Allowed Professional Fees are higher in fact than reflected in the Budget or estimated fees and disbursements of Case Professional reflected in the Budget; or (iii) as consent to the allowance of any professional fees or expenses of any Case Professionals. Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Documents, the Bankruptcy Code and applicable law. The DIP Agent's, the DIP Lenders', the Prepetition Agent's and Prepetition Lenders' liens and claims granted pursuant to this Final Order shall, however, be subject and subordinate to the Carve Out as set forth in this Final Order.

29.     [Reserved].

30.     <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.  The Statutory Committee, if granted standing, and any other party in interest granted standing (other than the Debtors and their successors, with the exception of a chapter 7 or 11 trustee appointed during the Challenge Period (as defined herein)) by the Court, may seek to avoid, object to or otherwise challenge the findings or Debtors' stipulations in the First Interim DIP Order regarding (a) the validity, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition Agents or any Prepetition Lender or (b) the validity, allowability, priority, fully secured status or amount of the Prepetition Obligations. A party, including the Statutory Committee, must commence, as appropriate, a contested matter or adversary proceeding raising

27

such claim, objection, defense, or other challenge, including, without limitation, any claim against the Prepetition Agents or any Prepetition Lender in the nature of a setoff, counterclaim or defense to the applicable Prepetition Obligations or the Prepetition Liens (each, a "Challenge") within the earlier of: (i) with respect to the Statutory Committee, the earlier of (y) May 20, 2010 and (z) the effective date of the Plan, and (ii) with respect to other parties in interest (other than a Statutory Committee and the Debtors and their successors) with requisite standing, seventy-five (75) calendar days following the date of entry of the Interim Order (together, the "Challenge Period"). The applicable Challenge Period may only be extended with the written consent of the Required Prepetition Lenders. Upon the expiration of the Challenge Period (the "Challenge Period Termination Date"), without the filing of a Challenge (or if any such Challenge is filed and overruled): (A) any and all such Challenges by any party (including, without limitation, the Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Cases), shall be deemed to be forever waived and barred, and (B) all of the Debtors' stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition Agent's and each Prepetition Lender's, claims, liens, and interests as set forth herein and in the First Interim DIP Order shall be of full force and effect and forever binding upon all the Debtors' estate and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases. To the extent that a Challenge is timely filed but does not expressly challenge all of the Debtors' stipulations, or to the extent any creditor, interest holder and other party interest does not file any timely Challenge, all such unchallenged Debtors' stipulations shall be of full force and effect and

LIBNY/4891329.3
RLF1 3545997v.1

forever binding upon all the Debtors' estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases, notwithstanding any timely-filed Challenge.

31. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

32. <u>Section 506(c) Claims</u>. No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders or any of their respective claims, the DIP Collateral or the Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the affected DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lender, and no such consent shall be implied, directly or indirectly, from any action, inaction, or acquiescence by any such agents or lenders.

33. <u>No Marshaling/Applications of Proceeds</u>. The DIP Agent, DIP Lenders, the Prepetition Agents, and Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.

34. <u>Section 552(b)</u>. The DIP Agent, DIP Lenders, Prepetition Agents, and Prepetition Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agents or any Prepetition Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

35. <u>Discharge Waiver</u>. The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming

29

any plan of reorganization, notwithstanding the provisions of sections 524 and/or 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtors shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or such sale, of all DIP Obligations.

36. Rights Preserved.

(a) Notwithstanding anything herein to the contrary, in the case of an Event of Default under the DIP Credit Agreement, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the DIP Agent's, any DIP Lender's, the Prepetition Agents' or the Prepetition Lenders' right under the Bankruptcy Code or under non-bankruptcy law including, but not limited to, the right (i) to seek any other or supplemental relief in respect of any Debtors; (ii) to request modification of the automatic stay of section 362 of the Bankruptcy Code; (iii) to request dismissal of any of the Cases or any Successor Cases, conversion of any of the Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers; or (iv) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.

(b) Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, DIP Lenders, Prepetition Agents, and Prepetition Lenders are preserved.

37. No Waiver by Failure to Seek Relief. The failure of the DIP Agent, any DIP Lender, any Prepetition Agent or Prepetition Lender to seek relief or otherwise exercise their respective rights and remedies under this Final Order, the DIP Documents, the Prepetition Credit

LIBNY/4891329.3
RLFI 3545997v.1

Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the applicable DIP Agent, DIP Lender, Prepetition Agent or any Prepetition Lender.

38.     Binding Effect of Final Order.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Lenders, all other creditors of the Debtors, any Statutory Committee or any other court appointed committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any of the Cases or any Successor Cases.

39.     No Modification of Final Order.  Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) (with full cash collateral provided for any contingent obligation (other than any indemnification obligations) that have not yet matured) and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Lenders (i) any modification, stay, vacatur or amendment to this Final Order (and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lenders); or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the

LIBNY/4891329.3
RLF1 3545997v.1

Cases or any Successor Cases equal or superior to the DIP Superpriority Claim or Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Lenders, any order allowing use of Cash Collateral (other than this Final Order); and (c) without the prior written consent of the DIP Lenders and the Required Prepetition Lenders, any lien on any of the DIP Collateral or Prepetition Collateral with priority equal or superior to the DIP Liens, Prepetition First Liens, or Adequate Protection Liens, except as specifically provided in the DIP Documents.

40. <u>Final Order Controls</u>. In the event of any inconsistency between the terms and conditions of (a) the DIP Documents, the First Interim Order, or the Interim Order, and (b) this Final Order, the provisions of this Final Order shall govern and control.

41. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; (d) discharging the Debtors; or (e) pursuant to which this Court abstains from hearing any of the Cases or any Successor Cases. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lenders, Prepetition Agents and Prepetition Lenders pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in any of the Cases, in any Successor Cases, or following dismissal of any of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all DIP Obligations and Prepetition Obligations have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Facility are terminated. The terms and provisions of the DIP Credit Agreement

LIBNY/4891329.3
RLF1 3545997v.1

concerning the indemnification of the DIP Agent and DIP Lenders shall continue in any of the Cases, in any Successor Cases, following dismissal of any of the Cases or any Successor Cases, and following termination of the DIP Documents and/or the repayment of the DIP Obligations.

42.    Effect of this Final Order.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

43.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: March _9_, 2010
        Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

LIBNY/4891329.3
RLF1 3545997v.1